525 So.2d 804 (1988)
COLONIAL MORTGAGE COMPANY, INC.
v.
Annette LEE, Individually, and as Administratrix of the Estate of John Morris Lee, Deceased.
No. 57678.
Supreme Court of Mississippi.
May 11, 1988.
*805 J. Elmo Lang, Pascagoula, for appellant.
David C. Frazier, Gordon, Myers, Pitcher, Tynes & Frazier, Pascagoula, for appellee.
Before DAN M. LEE, P.J., and ROBERTSON and ZUCCARO, JJ.
ROBERTSON, JUSTICE, for the court:

I.
This is another punitive damages case, although the factual setting is a bit different from the familiar bad faith refusal claim. Here a mortgage servicing company, charged to administer escrow accounts and therefrom to pay insurance and taxes, allowed a policy to lapse. The jury, however, found the policy in force and ordered the insurer to pay the homeowners' fire loss claim.
We find the mortgage service company's default wholly the product of an unintentional mistake, falling well short of gross neglect or reckless disregard for homeowners' rights. We reverse and render.

II.

A.
On or about June 1, 1979, Anthony Webber executed a purchase money deed of trust and delivered it to Southern Security Savings & Loan Association. The deed of trust contemplated and provided for an escrow arrangement for payment of property taxes and of fire and extended coverage insurance premiums. The escrow paragraph provided that Webber's monthly payments should include, in addition to principal and interest, a sum equal to the premiums that will next become due to renew the policies of fire and other hazard insurance on the mortgaged premises.
On November 1, 1979, Anthony Webber conveyed his home to John Morris Lee and Annette Lee as joint tenants with rights of survivorship. The instrument of conveyance provided that the Lees would assume all obligations owing to Southern Security under the deed of trust granted by Webber.
*806 The critical player in today's production is Colonial Mortgage Company, Inc. Colonial Mortgage is in the business of "servicing" mortgages held by others. The Lees' mortgage was one of the 42,000 accounts serviced by Colonial Mortgage. In September, 1980, the Lees' mortgage was assigned to Colonial.
Colonial Mortgage manages mortgage escrow accounts in the conventional manner. The annual taxes and insurance premiums are estimated and that sum is divided by twelve, yielding an amount added to the mortgage payment and charged to the mortgagor each month. The funds for taxes and insurance are placed in a single escrow account and expended as required. If at the time an insurance premium payment is due the mortgagor had no funds in the escrow account, Colonial advances money from its corporate funds so that the premises are protected. Any funds so advanced are added to the mortgagor's debt. This custom and practice protects mortgagor, mortgagee and Colonial Mortgage as well.
Colonial Mortgage does not choose the insurance company, though it will procure coverage if necessary. The Lees had been forced to purchase insurance through Mississippi Insurance Underwriters Association (MIUA) after a fire in their home made it impossible to purchase coverage from any other than the insurer of "last resort".
MIUA is an insurer created by the state to insure those who cannot obtain coverage from commercial insurance companies. As MIUA does not encourage or desire customers, it offers a basic, one year policy that is not renewable. A new application must be submitted each year. Nor does MIUA offer frills such as a thirty day grace period upon expiration. The Lees first purchased insurance from MIUA covering March 28, 1980, through March 28, 1981. The Lees reapplied for insurance for a second year but, due to a series of errors (to be explained in detail later), coverage lapsed for a number of days (from March 28 through April 15) before the new policy went into effect. As no damage to the Lees' property occurred during this lapse, the lapse went unnoticed by all. Unfortunately, when the same thing occurred between the end of the second year of coverage and the application for a third year of coverage (lapse between April 15, 1982, and April 29, 1982), the Lees  on April 19, 1982  suffered $1,427.92 fire loss in the children's bedroom. The Lees filed a claim for the amount of damage with MIUA but the insurer denied coverage as the policy had lapsed at the time of the fire.

B.
On November 29, 1984, Annette Lee filed suit in the Circuit Court of Jackson County against Colonial Mortgage Company, Inc., and Mississippi Insurance Underwriters Association, Inc., alleging that MIUA had "recklessly breached" its contract of insurance on the Lees' home or, in the alternative, that Colonial had breached its duty of good faith by failing to make insurance payments. She sued individually and as administratrix of her husband's estate[1] and asked $10,000.00 compensatory damages and $500,000.00 in punitive damages. The Lees[2] subsequently amended their complaint to add insurance agent Carl Nulta as an additional defendant.
On January 21, 1986, the jury returned a verdict against MIUA in the amount of $1,427.92 and punitive damages against Colonial Mortgage in the amount of $50,000.00. The jury found for insurance agent Nulta. The judgment of the Court reflecting the jury verdict was entered on January 24, 1986.
Five days later, on January 29, 1986, Colonial filed a motion for judgment notwithstanding the verdict, or, in the alternative, for a new trial. On February 4, 1986, the Lees filed a motion to amend or alter the judgment or, in the alternative, for relief from judgment or for judgment notwithstanding *807 the verdict. The next day, February 5, 1986, MIUA tendered to the Lees full payment of the amount of the jury verdict.[3]
Following a hearing on the various motions, the Circuit Court granted the Lees' motion in part and ordered that the judgment be amended "to reflect actual damages in the sum of $1,427.92 against the Defendants, Colonial Mortgage Company, Inc., and Mississippi Insurance Underwriters Association, Inc., jointly and severally, and that the Defendant, Colonial Mortgage Company, be assessed with all costs of court therein." From this judgment, only Colonial Mortgage appeals.

III.
We consider first Colonial's claim that the Circuit Court erred when it amended the judgment to assess Colonial, jointly and severally with MIUA, the sum of $1,427.92 attributable to the damage caused by the fire in the children's bedroom on April 19, 1982.
It will be recalled that the Lees' complaint in essence is that Colonial was negligent in allowing a lapse in the insurance coverage. The injury alleged is that, because of Colonial's neglect, the Lees were without insurance coverage and are out some $1,427.92. All of that was fine, well and good at the time, but the claim has now a hollow ring.
Judgment has been entered in favor of the Lees and against MIUA for $1,427.92. MIUA has perfected no appeal and has allowed the judgment to become final. Indeed, MIUA tried to pay the Lees who declined acceptance. MIUA has since paid the judgment by tendering into the registry of the Circuit Court the principal sum of $1,427.92. All the Lees have to do to become whole again is walk into the Circuit Clerk's office and pick up their check.[4]
Thus seen, the Lees' claim against MIUA becomes academic, and so it was when the matter was last before the Circuit Court. Insofar as that Court entered judgment in favor of the Lees and against Colonial Mortgage, it committed error.

IV.
The next issue is punitive damages. Colonial assigns as error the Circuit Court's refusal to enter judgment in its favor notwithstanding the jury's $50,000.00 punitive damages assessment against it.
Our rule regarding the proof which must be offered before one may recover punitive damages was analyzed in Weems v. American Security Insurance Co., 486 So.2d 1222 (Miss. 1986). After reviewing all of our cases theretofore, Weems identified
... two somewhat distinct types of circumstances wherein one's conduct may subject him to punitive damages: where the defendant acted with malice and where the defendant acted with gross negligence or reckless disregard for the rights of others... .
Weems, 486 So.2d at 1226. Since Weems, we have followed this approach in cases almost too numerous to cite. See, e.g., South Central Bell v. Epps, 509 So.2d 886, 892-93 (Miss. 1987); Scott v. Transport Indemnity Co., 513 So.2d 889, 896-97 (Miss. 1987); Blue Cross and Blue Shield of Mississippi, Inc. v. Maas, 516 So.2d 495, 496-97 (Miss. 1987); Mutual Life Insurance Co. of New York v. Estate of Wesson, 517 So.2d 521, 528 (Miss. 1987); Life Insurance Co. of Mississippi v. Allen, 518 So.2d 1189, 1193 (Miss. 1987); Aetna Casualty & Surety Co. v. Day, 487 So.2d 830, 832 (Miss. 1986).
A circuit court's decision whether to grant a punitive damages instruction follows a familiar pattern, no different than with any other requested instruction. The question is whether there is a sufficient evidentiary basis to warrant the instruction, *808 i.e., is the evidence sufficiently disputed that a jury issue has been made?
The test is the same when the propriety of the instruction is tested via post-trial motions for judgment notwithstanding the verdict. The trial court  and this Court on appeal  must look at the elements of the punitive damages claim enumerated above and decide whether, under the totality of the circumstances and viewing the defendant's conduct in the aggregate, a reasonable, hypothetical trier of fact could have found either malice or gross neglect/reckless disregard. See Life Insurance Company of Mississippi v. Allen, 518 So.2d at 1193; Mississippi Farm Bureau Insurance Co. v. Todd, 492 So.2d 919, 933 (Miss. 1986); see generally Maxwell v. Illinois Central Gulf Railroad, 513 So.2d 901, 905 (Miss. 1987); Stubblefield v. Jesco, Inc., 464 So.2d 47, 54 (Miss. 1985); Paymaster Oil Mill Co. v. Mitchell, 319 So.2d 652, 657 (Miss. 1975).
The gravamen of the Lees' complaint is that the negligence of Colonial Mortgage caused the lapse in insurance coverage. It seems that MIUA sent a notice that the Lees' insurance was due to expire on April 15, 1982, to Nulta and the Lees on January 28, 1982, (although Nulta and Annette Lee testified they did not receive the notice). No such notice was mailed to Colonial Mortgage, nor was any mortgagee ever notified of the expiration date on the mortgagor's insurance at that time by MIUA.
Colonial Mortgage requires that it receive a bill before it will pay any insurance premium on behalf of the mortgagor out of the escrow account. Bills that do come in are paid on or about the 8th and 26th of each month. A bill paid on the 8th during a month wherein a great number of bills were received, would have to be received a few days prior to the 8th or it would be relegated for payment on the 26th. If no bill had been received by the time the policy was to expire, Colonial would send a letter "generated by the computer" to the insurance agent notifying him to send a bill. This letter would go out with the "final bills" on or about the 26th of the month in which the premium was due.
No one worried about the policy lapsing because Colonial assumed all policies had a thirty day grace period. In the Lees' case, during the first year of their coverage by MIUA, which expired March 19, 1981, Colonial sent Nulta a letter requesting an invoice for the second year's premium on March 24, 1981. The second year's coverage was due to expire April 15, 1982 (as there was a gap between the first and second year). Nulta's secretary claims she received a letter from Colonial on March 30 or 31, 1982, requesting a bill for the Lees' insurance. This, Colonial denies since if the policy were to expire in April, no letter would be generated by the computer until April 26.
At any rate, Nulta's secretary, who had misplaced the Lee file, sent the letter from Colonial back to Colonial with a notation asking for more information. A day or two later (on April 1 or 2) she found the file and telephoned Colonial to advise them the policy was to expire soon and asked them to send the money for the premium immediately and Nulta's office would send a bill. Colonial, however, was adamant in requiring a bill before if would send any money. So Nulta's office sent an invoice on April 5, 1982, to Colonial and marked the due date "ASAP" but failed to include the due date. Colonial, which denies having discussed the policy over the phone with Nulta's secretary, received the invoice on April 9, 1982, but interpreted "ASAP" to mean "you pay as soon as possible, which would be your next billing date...."
The instant case is one in which few of the facts are disputed (the existence of certain phone calls between the insurance agency and Colonial being perhaps the only area of contention). Clearly Colonial's mechanism for dealing with MIUA policies was ill-equipped to handle those cases where no bill or expiration notice was received by Colonial.[5] Under those circumstances, Colonial allowed those policies to lapse for a period of several days under the *809 false assumption that every policy had a thirty day grace period. While some of the correspondence between the insurance agency and Colonial is disputed, it is uncontroverted that Colonial received a bill from Nulta on April 9 and mailed payment on the 22nd.
In the instant case, the acts, or more correctly the omissions, that caused the lapse in insurance arose out of ignorance rather than some wilful conduct. Colonial planned to pay the premium; the mechanism by which it did so was set up to deal only with policies having a thirty day grace period. Under this system even those policies with a grace period were renewed dangerously close to the end of the grace period where no bill was received prior to the expiration date.
Even so, we have little trouble concluding that such proof is hardly the stuff of which punitive damages claims are made. We hold as a matter of law that the Lees' evidence is insufficient to establish either malice or gross neglect on the part of Colonial. Accordingly, the Circuit Court erred when it refused to grant Colonial's motion for judgment notwithstanding the verdict on the punitive damages feature of the Lees' claim.

V.
In sum, the judgment in favor of the Lees and against Colonial Mortgage Co., Inc., in the amount of $1,427.92 as compensatory damages is reversed and rendered. Similarly, insofar as the Circuit Court entered judgment in favor of the Lees and against Colonial in the amount of $50,000.00 as punitive damages, we reverse and render.
REVERSED AND RENDERED
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
NOTES
[1] John Morris Lee died on November 7, 1982, of cardiac arrest due to renal failure, a matter no one suggests has any connection to this suit.
[2] Because she sues in dual capacities, we employ the denomination "the Lees" in this opinion.
[3] The Lees' counsel refused to accept this payment. MIUA thereafter tendered the money into the registry of the Court and asked for final discharge.
[4] The Lees have no more claim for compensatory damages over and above their $1,427.92 claim on the insurance contract. See Blue Cross & Blue Shield of Mississippi, Inc. v. Maas, 516 So.2d 495, 498 (Miss. 1987).
[5] After the fire placed the fact that MIUA policies have no grace period in sharp relief, Colonial changed the way they dealt with those policies. Now a list is kept of all MIUA policies and their expiration dates and those policies are worked on up to 45 days before the expiration date.