# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1999-CA-00089-SCT

*EARNEST BRADLEY AND FARM BUREAU INSURANCE COMPANY OF ARKANSAS, INC.*

*v.*

*TISHOMINGO COUNTY, MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 2/12/1999 |
| TRIAL JUDGE: | HON. FRANK A. RUSSELL |
| COURT FROM WHICH APPEALED: | TISHOMINGO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | JAMES T. METZ |
| ATTORNEY FOR APPELLEE: | JOHN R. WHITE |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND REMANDED-03/14/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/4/2002 |

**EN BANC.**

**COBB, JUSTICE, FOR THE COURT:**

¶1. Tishomingo County law enforcement officers seized a chop shop vehicle, and the County filed a complaint pursuant to the Motor Vehicle Chop Shop, Stolen, and Altered Property Act, Miss. Code Ann. §§ 63-25-1 to -13 (1996 & Supp. 2001), seeking forfeiture of the 1995 GMC vehicle.

¶2. Earnest Bradley (Bradley) and Farm Bureau Insurance Company of Arkansas, Inc. (Farm Bureau) were served with process as interested parties and filed an answer and cross-claim. They denied that the County could claim any legal interest in the vehicle and asserted that Bradley was the legal owner and entitled to the return of his 1996 red Chevrolet Blazer pursuant to the innocent owner provisions of § 63-25-9(1).

¶3. At trial, by stipulation, the deposition of Tom Zimmer, agent for the National Insurance Crime Bureau, was admitted as the only evidence of ownership of the 1995 GMC composite vehicle which is the subject of this appeal. The circuit court's findings of fact and conclusions of law vested title in Tishomingo County. Aggrieved by the judgment of the trial court, Bradley and Farm Bureau raise the following issues on appeal:

> **I. DOES THE MISS. CONST. ART. 3, § 17 PRECLUDE FORFEITURE UNDER THE FACTS AND CIRCUMSTANCES PARTICULAR TO THIS CASE?**
>
> **II. WERE THE COURT'S FINDINGS MANIFESTLY WRONG AND/OR DID THE COURT APPLY AN ERRONEOUS LEGAL STANDARD IN FINDING THAT THE PROPERTY IS SUBJECT TO FORFEITURE PURSUANT TO MISS. CODE ANN. § 63-**

**25-9?**

¶4. We conclude that there was manifest error, and we reverse and remand to the trial court with instructions for further proceedings.

## FACTS

¶5. Pursuant to the asset seizure provisions of Miss. Code Ann. § 63-25-7, a vehicle and component parts were seized by the Mississippi Department of Public Safety (MDPS) in Tishomingo County in an investigation of a chop shop. The vehicle, appearing to be a red 1996 Chevrolet Blazer, was a chop shop assemblage of a 1995 GMC rolling frame and a 1996 Blazer body and interior. The GMC rolling frame was identified by the VIN number appearing on the frame. The MDPS contacted the National Insurance Crime Bureau (NICB) and asked for assistance in identifying and determining the origin of the vehicle and other component parts seized from the chop shop. Special Agent Zimmer, an expert in stolen vehicle identification, inspected the bare rolling frame and the complete vehicle.

¶6. In deposition testimony, Zimmer explained that a "rolling frame" consists of a frame, two axles, engine and transmission, essentially everything left underneath a vehicle after the body is unbolted (including, in this instance, the tires which had not been removed). The VIN numbers of the bare rolling frame had been obliterated, but Zimmer was able to identify it as that of a 1996 Chevrolet Blazer.

¶7. Zimmer also inspected a complete vehicle, which he described as the product of an incomplete yet typical "body swing" whereby bolts are removed, the body lifted off its frame and placed on a different frame. The body was that of a red 1996 Blazer. It was attached to a 1995 GMC rolling frame with tires. The Blazer hood had not been recovered. Zimmer described several secondary methods in his testimony to identify both the Blazer and GMC components of the vehicle.

¶8. Based on his investigation, Zimmer's opinion was that the red body of the Blazer, as well as the bare rolling frame he had examined first, were both from the same red 1996 Chevrolet Blazer belonging to Bradley. The ownership of the GMC rolling frame underneath the red Blazer body was undetermined.

¶9. Colonel Jim Boxx, Director of the Criminal Investigation Bureau of the MDPS, filed an affidavit stating that the Department has determined that Farm Bureau has "a right or interest in the 1995 GMC" rolling frame, and that "[t]he body and interior of the 1996 Blazer owned by Farm Bureau is now on the GMC rolling frame." The affidavit is ambiguous, but it appears that Farm Bureau's claim to the right or interest in the GMC rolling frame derives solely from the fact that the red Blazer body is attached to it, and not from any independent claim to ownership.

¶10. The circuit court relied upon Zimmer's expert opinion and held that because the ownership of the rolling frame underneath the Blazer body could not be determined, the vehicle (including Bradley's red Blazer body) was subject to forfeiture and that title in the entire composite vehicle was vested in the County.

## STANDARD OF REVIEW

¶11. A trial judge's finding is entitled to the same deference as a jury and will not be reversed unless manifestly wrong. *R. C. Constr. Co. v. Natl. Off. Sys., Inc.* , 622 So. 2d 1253, 1255 (Miss. 1993). A reviewing court cannot set aside a verdict unless it is clear that the verdict is a result of prejudice, bias, or fraud, or is manifestly against the weight of credible evidence. *Sessums v. Northtown Limousines, Inc.*,

664 So. 2d 164, 168 (Miss. 1995). However, the substantial evidence/manifest error rule applies only where the trial court has applied the correct legal standard in making its findings. *Davis v. Davis,* 643 So. 2d 931, 934 (Miss. 1994). If the trial court's findings were manifestly wrong or the court applied an erroneous legal standard, this Court will not hesitate to reverse. *Tilley v. Tilley,* 610 So. 2d 348, 351 (Miss. 1992).

## DISCUSSION

### I. DOES THE MISS. CONST. ART. 3, § 17 PRECLUDE FORFEITURE UNDER THE FACTS AND CIRCUMSTANCES PARTICULAR TO THIS CASE?

¶12. The takings clause of the Mississippi Constitution reads as follows:

> Private property shall not be taken or damaged for public use, except on due compensation being first made to the owner or owners thereof, in a manner to be prescribed by law; and whenever an attempt is made to take private property for a use alleged to be public, the question of whether the contemplated use be public shall be a judicial question, and, as such, determined without regard to legislative assertion that the use is public.

Miss. Const. art. 3, § 17. In the instant case, private property has been taken for public use without compensation to those who have been determined to be the owners of the property.

¶13. Section 17 is not applicable except where private property is taken for public use by public authorities. *Burkett v. Ross*, 227 Miss. 315, 322, 86 So. 2d 33, 36 (1956). Here, the County, acting as a public authority has taken Bradley's vehicle (or at least part of it) for public use. Private property is property of a specific, fixed, and tangible nature, capable of possession, and transmission. *Homochitto River Comm'rs v. Withers*, 29 Miss. 21, 32 (1855), *aff'd sub nom. Withers v. Buckley,* 61 U.S. (20 How.) 84, 15 L.Ed. 816 (1857). Clearly, Bradley's Blazer body is specific, fixed, tangible property, capable of possession and transmission. Hence, Section 17 is applicable in this instance as the forfeiture was initiated by the County through its officials and the subject matter of the forfeiture fulfills the definition of "private property".

¶14. The County and Bradley stipulated that Zimmer, a special agent for the National Insurance Crime Bureau, is an expert in stolen vehicle identification. As required by Miss. Code Ann. § 63-25-9(4)(b), the County, through the Mississippi Highway Safety Patrol, had requested that Zimmer determine identification and origin of the vehicle and components. He determined that the Blazer body was owned by Bradley and that the bare rolling frame was original to the Blazer body. He also determined the dealership from which the Blazer vehicle was purchased. Moreover, an inscribed Bible belonging to Bradley was found under the passenger seat of the Blazer.

¶15. Zimmer's uncontradicted testimony is supported by that of Colonel Boxx of the Mississippi Department of Public Safety. Boxx stated that because ownership of the vehicle had been determined, the State would not seek forfeiture. Zimmer's deposition and Boxx's affidavit are the only testimony in the record.

¶16. Once the circuit court order vesting title in Tishomingo County was entered, (1) private property (2) was taken (3) by the County for public use (4) without compensation to the owner who had been determined. Not only does the chop shop forfeiture statute preclude the taking of private property when the

innocent owner is known, but also Miss. Const. art. 3, § 17 precludes taking of private property for public use without due compensation. Both preclude forfeiture of Bradley's vehicle, or parts thereof, to Tisoimingo County. This remains so, regardless of the fact that Bradley's Blazer existed in an altered form. This remains so regardless of the fact that at the time it was discovered, the Blazer had been disassembled, the cab assembled onto the rolling frame of an unidentified GMC, and its own bare original rolling frame set apart. And it remains so despite the fact that the rolling frame of the unidentified GMC, had it been discovered standing alone and had it remained unidentified, would have been subject to forfeiture to Tishomingo County pursuant to Miss. Code Ann. § 63-25-9.

¶17. The core arguments of Bradley and the County are fairly mirror-images. The County essentially argues, "Because the GMC rolling frame is subject to forfeiture to the seizing law enforcement agency, we should get the vehicle". Bradley argues, "Because the Blazer body and interior is mine, I should get the vehicle." The county depends heavily upon the fact that they sought forfeiture under the VIN number and name of the 1995 GMC, rather than forfeiture of the Blazer. Bradley's brief correctly points out that the forfeiture could have just as easily been styled "Tishomingo County vs. a complete vehicle comprised of parts and frame from two different vehicles". The County would have this Court ignore the fact that the "other half" of the vehicle was Bradley's, while at the same time arguing that "Bradley ignores the fact that no determination of ownership was made of the GMC that was the subject of the forfeiture in the first place." Bradley's argument does not ignore the fact that the owner of the GMC frame was undetermined. He simply argues that this fact does not substantiate forfeiture of the Blazer body. Bradley does not merely argue that **part** of his vehicle was **attached to** the vehicle sought under forfeiture, rather, that **his vehicle** has been forfeited.

¶18. Although the County filed a complaint seeking forfeiture and identified the vehicle subject to forfeiture as a 1995 GMC, in reality it was in possession of an assemblage of rolling frame and body of two different vehicles. To call the vehicle either a Blazer or a GMC does not paint the entire picture. Fortunately, this Court is not asked to solve the dilemma of what the vehicle should be called. We however, note that for all practical purposes the vehicle, in appearance, is a Blazer. The County paints a picture in which the Blazer body is merely part of the vehicle, and in which the GMC rolling frame is the vehicle. The County further asserts that because the mere Blazer body was attached to the GMC vehicle, the Blazer body should be forfeited along with the GMC. Bradley, on the other hand, paints an opposite picture of the vehicle, that is, it was his red Blazer, attached to a GMC frame, which was confiscated by the County.

¶19. No matter how one might label the subject matter of the forfeiture, the County has at least part of Bradley's vehicle. In fact it apparently has all of it, although the record is not clear that the bare frame which was investigated was the frame of Bradley's red Blazer. And no mention was made of the bare frame in the complaint. The County contends that Bradley must have intended to "avoid the wisdom of King Solomon and prevent the vehicle from being cut in half whereby each party would receive an equal share." However, in his trial brief and appellate brief, Bradley did **not** specifically request that the vehicle **not** be disassembled. In an obvious effort to be reasonable, his brief to this Court concludes, "Mr. Bradley is the owner of the body in Exhibit 3 and the rolling frame in Exhibit 2. Therefore, this Court should order that Mr. Bradley's property be returned to him." Although Bradley briefly cites Zimmer's testimony that the car could be pieced back together by the reverse process of the "body swing", Bradley does not specifically ask for the vehicle to be disjoined and returned to original specifications. He does not ask for both the intact rebuilt Blazer and the bare rolling frame of the Blazer. Nor does he ask for "half" of any vehicle. He asks for "his property to be returned."

¶20. The County does not argue for an equal distribution of "halves." On the contrary, since January 7, 1997, the County has held the entire vehicle. The County asserts that this Court should affirm the trial court's judgment of forfeiture of the intact rebuilt Blazer as assembled onto the GMC rolling frame.

¶21. The trial court heard testimony regarding how "body swings" are accomplished, not only as part of criminal activity, but as routine practice in salvage rebuilding. Therefore, to revisit a dismantling of the vehicle, thereby returning the cab to its original frame, is not an impossible resolution, albeit far from a practical one. Furthermore, it appears that this "remedy" could not be accomplished without further expense or the possibility of affecting the value of the property.

¶22. Because there was seizure of Bradley's private property without due compensation, this constitutes a violation of Miss. Const. art. 3, § 17. Therefore, we find that Issue I has merit.

### II. WERE THE COURT'S FINDINGS MANIFESTLY WRONG AND/OR DID THE COURT APPLY AN ERRONEOUS LEGAL STANDARD IN FINDING THAT THE PROPERTY IS SUBJECT TO FORFEITURE PURSUANT TO MISS. CODE ANN. § 63-25-9?

¶23. The act of theft temporarily deprived Bradley of his vehicle. The chop shop "body swing" deprived him of the vehicle he purchased, that is, the Blazer as it exited the factory and as built per manufacturer's specifications. And now the County seeks to permanently deprive him of what is left of his Blazer, reasoning that because it was attached to an unidentified stolen frame subject to forfeiture, it too should be forfeited even though, having been identified, it is not subject to forfeiture. The County's reasoning and argument fail.

¶24. Miss. Code Ann. § 63-25-7(1) (1996) states:

(1) Any motor vehicle or motor vehicle part with vehicle identification numbers or marks which have been altered, counterfeited, defaced, destroyed, disguised, falsified, forged, obliterated or removed may be seized and detained by law enforcement officials for a determination of the true identity of such property. Any such property seized by law enforcement officials, <u>when ownership</u> <u>cannot be determined</u>, shall be contraband and subject to forfeiture.

(emphasis added).

¶25. The phrase "when ownership cannot be determined" makes it clear that the Legislature did not intend to allow the seizure and forfeiture of private property where, as here, the owner is known. A finding that ownership cannot be determined is a precursor to a valid forfeiture under the statute. Yet the circuit court did not state in its findings that ownership of the Blazer cannot be determined. In fact, Bradley and the County agree that the ownership of the Blazer was determined.

¶26. Miss. Code Ann. § 63-25-9(4)(b) states:

Where a motor vehicle or motor vehicle part has an apparent value in excess of One Thousand Dollars ($1,000), the seizing agency shall:

(i) Consult with an expert specially trained and experienced in motor vehicle theft investigative procedures and motor vehicle identification techniques; and

(ii) Request searches of the on-line and off-line files of the National Crime Information Center (NCIC) and the National Automobile Theft Bureau (NATB) when the Highway Safety Patrol's files have been searched with negative results.

Once the requirements of the statute are met, the County must prove by a preponderance of evidence that ownership cannot be established. Miss. Code Ann. § 63-25-9(7)(e). Here, ownership of the Blazer was established by an expert, Zimmer, and MDPS. Colonel Boxx stated that since ownership had been determined, the Department of Public Safety would not seek forfeiture. The County followed the dictates of the statute regarding the investigation but then ignored the results of the investigation by seeking forfeiture.

¶27. The circuit court erred in ordering forfeiture of the composite vehicle to Tishomingo County. Once ownership of a motor vehicle is established, forfeiture is precluded. Once ownership of a motor vehicle part[1] is established, the forfeiture of the motor vehicle part is precluded.

## CONCLUSION

¶28. Because both issues raised by Bradley and Farm Bureau have merit, we reverse the judgment of the trial court. However, common sense dictates that further dissection of the subject property may not be reasonable, thus this Court remands to the trial court for further proceedings, as follows: Presuming that ownership of the 1995 GMC rolling frame has not been established, the rolling frame may properly be forfeited to Tishomingo County. Because ownership of the 1996 red Blazer body and the 1996 Blazer rolling frame has been established according to the record before this Court, they should be returned to Bradley. The trial court should allow a reasonable period for negotiation among the parties, during which hopefully an agreement can be reached regarding the various motor vehicle parts in controversy. If none is reach, the trial court should conduct a hearing at which Bradley, Farm Bureau, and Tishomingo County shall be allowed to present evidence and argument regarding a practical resolution of the matter of dismantling the 1996 red Blazer body from the 1995 rolling frame and any other matters appropriately raised. After such hearing, the trial court should enter its final order consistent with this opinion.

¶29. **REVERSED AND REMANDED.**

**PITTMAN, C.J., McRAE AND SMITH, P.JJ., WALLER, DIAZ, CARLSON AND GRAVES, JJ., CONCUR. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**

1. Throughout there is reference to "motor vehicle parts". Unfortunately, no definition of that term is included in the definition section (§ 63-25-3) or elsewhere in the chapter. For purposes of this opinion, and unless or until the Legislature chooses to provide a definition, the term "motor vehicle part" means any part, the uniqueness of which can be established by either expert law enforcement investigative personnel or by expert employees of not-for-profit motor vehicle theft prevention agencies, specially trained and experienced in motor vehicle theft investigation procedures and motor vehicle identification examination techniques.