16 So.3d 764 (2009)
Russell PUCKETT, Appellant
v.
Robert N. GORDON III, d/b/a Trey Gordon Roofing Contractor, Appellee.
No. 2008-CA-01159-COA.
Court of Appeals of Mississippi.
August 18, 2009.
*765 Thomas Perry Setser, attorney for appellant.
William M. Bost Jr., attorney for appellee.
Before MYERS, P.J., IRVING and ROBERTS, JJ.
IRVING, J., for the Court.
¶ 1. Following a bench trial, the Warren County County Court granted Robert N. Gordon III, d/b/a Trey Gordon Roofing Contractor, a judgment in the amount of $28,504.90 against Russell Puckett. The judgment was comprised of $17,603.65 for a breach of contract claim,[1] $100 as nominal damages for an aggravated assault claim, $2,500 for punitive damages, and $8,301.25 in attorney's fees. Puckett appealed to the Warren County Circuit Court, which affirmed the county court's decision. Aggrieved, Puckett has appealed here and asserts: (1) that the county court should have dismissed Gordon's complain; (2) that the county court erred in finding that Gordon acted as an agent and construction manager for him, rather than as *766 a remodeler, contractor, or subcontractor; (3) that the county court erred in finding that he committed an assault against Gordon; (4) that the county court erred in awarding Gordon punitive damages; (5) that the county court erred in awarding Gordon attorney's fees; and (6) that the county court erred in dismissing his assault claim against Gordon.
¶ 2. We find merit in Puckett's second issue, as we agree that the circuit court erred in affirming that portion of the county court judgment which found that Gordon acted as Puckett's agent or construction manager, rather than as his general contractor or remodeler. It necessarily follows as a corollary to this finding that the circuit court also erred in affirming that portion of the judgment awarding Gordon $17,603.65 for his breach of contract claim, as the viability of the contract claim is dependent upon Gordon being found to have acted wholly as a construction manager rather than as a construction contractor or remodeler. Therefore, we reverse and render that portion of the county court judgment awarding $17,603.65 in breach of contract damages and affirm the remainder of the judgment in the amount of $10,901.25.

FACTS
¶ 3. Puckett's home, Feld House,[2] was damaged when a large tree fell on it during Hurricane Katrina in August 2005. Puckett, who was bedridden during this time, employed Gordon, a roofer, to repair the home.[3] Gordon prepared an estimate for the repairs, which Puckett approved, in the amount of $119,300. Puckett submitted the estimate to his insurance company, which promptly paid it minus the policy deductible. Gordon submitted his first invoice to Puckett for $9,128.81, and Puckett paid it without incident. However, Puckett was not as forthcoming when Gordon presented his second invoice for $17,603.65. Gordon went to Puckett's home on two occasions in an attempt to collect payment, but each time Puckett refused to tender payment, resulting in Gordon initiating a lawsuit to recover (1) the amount owed on the second invoice; (2) damages for an assault against him by Puckett which, according to Gordon, occurred during one of his two attempts to collect the amount due him; (3) punitive damages; and (4) attorney's fees. The facts surrounding the assault are discussed later in this opinion.
¶ 4. During the trial, Gordon testified that Puckett contacted him immediately after Hurricane Katrina about performing repairs to Feld House. According to Gordon, Puckett informed him that Puckett wanted Gordon to oversee the project, as Puckett was physically unable to do so. Gordon stated that he met with an insurance adjuster, obtained two estimates for removal of the tree, and placed a tarp over the tree on the roof to preclude further damage to the roof. Gordon testified that, after receiving authorization from Puckett, he hired Richard Antoine to perform the structural work. Gordon also testified that, in addition to reporting to Puckett, he maintained constant contact with Puckett's assistant, Harvey Smith.
¶ 5. Gordon stated that when he went to visit Puckett regarding payment for the second invoice, Puckett informed him that he had not received the check from the *767 insurance company. Gordon testified that he called the insurance company about three weeks later and learned that the check already had been sent to Puckett. According to Gordon, he then contacted Smith, who informed him that he had the check in his possession. Gordon stated that he met with Puckett shortly thereafter. Gordon recalled telling Puckett that he was aware that Puckett had not been truthful regarding the reason Puckett had given him for not making the payment, but Puckett still refused to pay.
¶ 6. Gordon stated that he, along with Antoine, went to visit Puckett a second time regarding payment of the second invoice. He testified that when he presented the invoice to Puckett, Puckett informed him that the roof leaked after the repairs that he had made the previous March. According to Gordon, this was the first time that he learned that there were problems with the previous repairs. Gordon testified that he attempted to compromise with Puckett by suggesting that Puckett withhold $6,200 (the amount that Puckett had paid him for the March repairs) of the amount that was presently due him per the second invoice. Gordon stated that he said to Puckett, "You hold that and you pay me the money you owe me now and then when it rains a lot and you're satisfied, then you give me the rest of my money." Gordon stated that Puckett refused to accept his offer of compromise. Instead, according to Gordon, Puckett reached under his pillow, pulled out a.38 caliber handgun, pointed it "point-blank" at his face, and threatened to shoot him. Gordon testified that he left the premises immediately following this incident and did not return to finish the repairs. Gordon explained that this incident has had a negative impact on his daily life and that he has sought treatment from a psychologist.[4]
¶ 7. Antoine testified at the trial and corroborated Gordon's version of events. He also stated that when Puckett pulled the gun on Gordon, Puckett informed Gordon that he had "used a gun before and that he would use it again if he needed to."
¶ 8. Puckett relayed a slightly different version of what transpired. According to Puckett, Gordon contacted him about serving as general contractor for the project. Puckett stated that he was reluctant to employ Gordon because he had had problems with Gordon's work on the previous project. Puckett stated that he informed Gordon "numerous times" that the roof was leaking. Despite this, Puckett testified that he hired Gordon, who represented himself as a "licensed, bonded, general contractor," to serve as his general contractor. Puckett stated that he did not find out until later that Gordon did not hold a license with the State of Mississippi when Gordon served as his general contractor.
¶ 9. As for Gordon's responsibilities during the restoration process, Puckett testified that Gordon made the final decisions regarding the persons who would remove the tree and who would paint, plaster, and wallpaper the walls. Puckett stated that he did not meet Antoine until the "day he fired Gordon." Puckett also stated that he did not pay the second invoice presented by Gordon because he considered Gordon's expenses unreasonable. Puckett testified that he factored into his decision that the roof that Gordon had previously repaired continued to leak. Also, Puckett testified that, two weeks before the confrontation, *768 he told Gordon, "I'm going to wait until we have two winds accompanied by rain, and if it doesn't leak, I'll be glad to pay you."
¶ 10. Although Puckett admitted pulling the gun on Gordon and Antoine, he stated that he did so after Gordon moved close to him, as he was sitting in bed, and threatened to break his neck. Puckett stated that he pointed the gun at Gordon and instructed him to "get [his] equipment and get off of [my] property." However, Puckett denied making threats and argued that Gordon had made numerous threatening telephone calls to him at his home.
¶ 11. The trial judge noted that it had been two years since Gordon had made the repairs to Puckett's roof and that there had been several rains accompanied by wind during that time. The trial judge asked Puckett why he continued to withhold payment from Gordon. Puckett responded by referring back to the work that Gordon had done in March 2005, work that Puckett claimed was not satisfactory. The trial judge then asked Puckett why he did not accept Gordon's offer to withhold the $6,200. Puckett responded by saying that the matter was in his attorney's hands by the time Gordon made the offer.[5]
¶ 12. During rebuttal testimony, Gordon denied telling Puckett that Gordon was a licensed, bonded, and insured general contractor. Likewise, Gordon denied threatening Puckett on the day of the confrontation and making threatening telephone calls to Puckett at any time thereafter.

ANALYSIS AND DISCUSSION OF THE ISSUES

1. Dismissal of Gordon's Complaint
¶ 13. In his first issue, Puckett contends that the trial judge should have dismissed Gordon's action as it relates to recovery of the $17,603.65 because Mississippi Code Annotated section 73-59-9(3) (Rev.2008) bars Gordon from recovering. Section 73-59-9(3) provides: "A residential builder or remodeler who does not have the license provided by this chapter may not bring any action, either at law or in equity, to enforce any contract for residential building or remodeling or to enforce a sales contract." (Emphasis added). As stated, Puckett asserts that Gordon worked as a general contractor or remodeler, while Gordon argues that he served as Puckett's agent or construction manager.[6]
¶ 14. We note at the outset that the county court judge adopted the findings of fact submitted by Gordon, and the circuit court affirmed the county court's judgment and findings of fact. The law is clear in this state that "[a] trial judge's finding is entitled to the same deference as a jury and [the finding] will not be reversed unless manifestly wrong." Miss. Dep't of Transp. v. Johnson, 873 So.2d 108, 111(¶ 8) (Miss.2004) (quoting Bradley v. Tishomingo County, 810 So.2d 600, 602-03(¶ 11) (Miss.2002)). It is also clear that an appellate court can only set aside a verdict when it is the result of "prejudice, bias, or fraud, or is manifestly against the weight of credible evidence." Id. Nevertheless, the Johnson court further held that "when the trial judge is sitting as the finder of fact, and chooses to adopt in toto a party's proposed findings of fact and conclusions of law, we will conduct a de novo review of the record." Id. (citing Holden v. Frasher-Holden, 680 So.2d 795, 798 (Miss.1996)). Thus, we conduct a de novo review.
*769 ¶ 15. Mississippi Code Annotated section 73-59-1(c) (Rev.2008) defines a remodeler as "any corporation, partnership or individual who, for a fixed price, commission, fee, wage, or other compensation, undertakes or offers to undertake the construction, or superintending of the construction, of improvements to an existing residence when the cost of the improvements exceeds Ten Thousand Dollars ($10,000.00)."
¶ 16. Gordon does not dispute that he performed the work on Puckett's house without a license; however, he contends that, because he worked as an agent or construction manager, he was not required to hold a license. Section 73-59-1 does not define construction manager; therefore, Puckett directs our attention to Aladdin Construction Co. v. John Hancock Life Insurance Co., 914 So.2d 169 (Miss. 2005).
¶ 17. In Aladdin, John Hancock Mutual Life Insurance Company (John Hancock) entered into a contract with McMo, Inc. (McMo) to provide project management services, along with design and construction documentation services, for a mall renovation. Id. at 171(¶ 1). McMo entered into an agreement with Aladdin Construction Company (Aladdin), wherein Aladdin served as a contractor and John Hancock served as owner. Id. at (¶ 2). John Hancock routed payments due to Aladdin via McMo; however, McMo did not properly tender payment to Aladdin. Id. Sometime thereafter, McMo filed for bankruptcy. Id. Aladdin filed suit against John Hancock attempting to recover on the theory that McMo acted as an agent of John Hancock. Id. John Hancock responded, asserting that McMo was not its agent, that McMo acted as its general contractor, and that Aladdin was estopped from seeking recovery against it because Aladdin did not timely utilize the provisions of our "stop notice statute" found at Mississippi Code Annotated section 85-7-181 (Rev.1999). Id. The Jackson County Chancery Court granted summary judgment in favor of John Hancock, finding that McMo acted as a general contractor. Id. at 174(¶ 6). The Mississippi Supreme Court reversed and remanded, finding that genuine issues of material fact existed regarding whether an agency relationship existed between John Hancock and McMo. Id. at 180(¶ 24).
¶ 18. In reaching its decision, our supreme court recognized the difference between a general contractor and a construction manager:
[The Mississippi Supreme Court] has defined a general contractor as "the party to a building contract who is charged with the total construction and who enters into sub-contracts for such work as electrical, plumbing and the like." Associated Dealers [Supply, Inc. v. Mississippi Roofing Supply, Inc.], 589 So.2d. . . [1245,] 1247-48 [(Miss.1991)] (quoting Black's Law Dictionary 349 & 621 (5th ed.1983)). The term "construction manager" has not yet been defined in Mississippi. Other courts have defined the term, however, finding that "[a] general contractor and a construction manager are separate and distinct titles with different responsibilities and different relationships to the parties to a construction project." R & A Constr. Corp. v. Queens Boulevard Extended Care Facility Corp., 290 A.D.2d 548, 549, 736 N.Y.S.2d 423 (N.Y.App.Div.2002). See also Baum v. Ciminelli-Cowper Co., 300 A.D.2d 1028, 1029, 755 N.Y.S.2d 138, 139-40 (N.Y.App.Div.2002) (the existence of a distinction between "general contractor" and "construction manager" is a question of fact for trial on the merits). While "there is no single, widely accepted definition of construction *770 management," Sagamore Group, Inc. v. Comm'r of Transp., 29 Conn.App. 292, 614 A.2d 1255, 1259 (1992), the Plaintiffs cite the distinction drawn between a general contractor and a construction manager by the Rhode Island Supreme Court in Brogno v. W & J Associates, Ltd., 698 A.2d 191, 194 (R.I.1997). The Brogno [c]ourt found that "the [construction manager] acts as a mere agent for a project's owner and . . . engages `trade contractors' in his principal's name to perform most or all of the actual work." Id. (quoting Bethlehem Rebar Indus., Inc. v. Fid. & Deposit Co., 582 A.2d 442 (R.I.1990)). See also Sagamore Group, 614 A.2d at 1259 ("Today. . . [a construction manager] is more commonly a group, a company, or a partnership with two paramount characteristics: construction know-how and management ability."). On the other hand, a general contractor "is in the chain of liability and . . . hires `subcontractors' in his own name to perform work." Brogno, 698 A.2d at 194 (quoting Bethlehem Rebar, 582 A.2d at 442).
Id. at 175-76(¶ 11).
¶ 19. As stated, Gordon testified (1) that he met with the insurance adjuster, (2) that he obtained two estimates for removal of the tree, (3) that he temporarily preserved the roof while the house was being repaired, (4) that he did not have much contact with Puckett, (5) that he hired, fired, and paid the subcontractors, and (6) that he performed some of the repairs and maintenance on the home. Also, Gordon testified that he "dealt with everything on behalf of Mr. Puckett," including paying subcontractors out of his pocket.
¶ 20. We find that Gordon acted as a general contractor, not as an agent or construction manager, within the meaning of Aladdin. We further find that Gordon acted as a remodeler within the meaning of Mississippi Code Annotated section 73-59-1(c) and is barred from recovery by section 73-59-9(3) because he did so without a license. Accordingly, we reverse and render that portion of the circuit court's judgment affirming the county court's award of $17,603.65 in damages to Gordon for breach of contract by Puckett.

2. Assault
¶ 21. Puckett contends that the county court judge erred in finding that he had committed an assault upon Gordon. According to Puckett, it is disputed as to whether he was justified in pointing the gun at Gordon. It is well settled in this state that when presented with conflicting evidence during a bench trial, the trial judge is charged with making a determination as to the credibility of the witnesses. In Re Estate of Grubbs v. Woods, 753 So.2d 1043, 1052-53(¶ 39) (Miss.2000) (citing Rice Researchers, Inc. v. Hiter, 512 So.2d 1259, 1265 (Miss.1987)). The county court judge heard accounts from Puckett, Gordon, and Antoine prior to reaching his decision and found Gordon's account more credible. We cannot hold him in error for doing so. This issue lacks merit.
¶ 22. Puckett also argues that the county court judge erred in dismissing his assault charge against Gordon. It is Puckett's contention that he pulled the gun on Gordon only after Gordon approached him and threatened to break his neck. He also contends that Gordon made threatening telephone calls to him. Puckett asserts that he is entitled to damages for assault as a result.
¶ 23. Again, the county court judge heard testimony from Puckett, Gordon, and Antoine. Gordon and Antoine stated that Gordon did not make any threats to Puckett when they went to collect the money, and Gordon denied making any *771 threatening calls to Puckett. Apparently, the county court judge believed Gordon and Antoine rather than Puckett. For the reasons stated above, we cannot find error with the county court judge's decision. There is no merit to this issue.

3. Punitive Damages
¶ 24. Next, Puckett contends that punitive damages were not warranted for two reasons: Gordon did not suffer any harm and Puckett's actions were justified. In Summers ex rel. Dawson v. St. Andrew's Episcopal School, Inc., 759 So.2d 1203, 1215(¶ 52) (Miss.2000) (citing Fowler Butane Gas Co. v. Varner, 244 Miss. 130, 150-51, 141 So.2d 226, 233 (1962)), the Mississippi Supreme Court stated that "[a]s a general rule, exemplary or punitive damages are `added damages' and are in addition to the actual or compensatory damages due because of an injury or wrong." Further, it is well established that:
The award of punitive damages, along with the amount of such, are within the discretion of the trier of fact. Fought v. Morris, 543 So.2d 167, 173 (Miss.1989). "Nevertheless, the trial court, in determining if the issue should be submitted to the jury, must `decide whether, under the totality of the circumstances and viewing the defendant's conduct in the aggregate, a reasonable, hypothetical trier of fact could have found either malice or gross neglect or reckless disregard.'" Peoples Bank & Trust Co. v. Cermack, 658 So.2d 1352, 1361 (Miss. 1995) (quoting Colonial Mortgage Co. v. Lee, 525 So.2d 804, 808 (Miss.1988)).
Id. at 1215(¶ 53).
¶ 25. As stated, Gordon testified that Puckett pointed the gun at his face point-blank and threatened to kill him. Also, Gordon testified that as a result of this incident, he began seeing a psychologist and that he has had trouble sleeping because he has been "obsessed about it." Based on these facts, the county court judge concluded that Puckett's actions warranted punitive damages. Our review of the record reveals that the county court judge did not abuse his discretion in awarding punitive damages to Gordon; therefore, we cannot second-guess his decision. This issue lacks merit.

4. Attorney's Fees
¶ 26. Puckett argues that the trial judge erred in awarding attorney's fees to Gordon and contends that the award is based solely on the award of punitive damages. Our supreme court has held that "[w]hen there is no contractual provision or statutory authority providing for attorney fees, they may not be awarded as damages unless punitive damages are also proper." Greenlee v. Mitchell, 607 So.2d 97, 108 (Miss.1992) (citing Cent. Bank of Miss. v. Butler, 517 So.2d 507, 512 (Miss. 1987)). Also, it is clear in this state that the trial judge is charged with determining what is a reasonable amount of attorney's fees. Miss. Power & Light Co. v. Cook, 832 So.2d 474, 478(¶ 7) (Miss.2002) (citing Gilchrist Tractor Co. v. Stribling, 192 So.2d 409, 418 (Miss.1966)). Further, the trial judge's decision will only be reversed when it is clear that there has been an abuse of discretion. Mabus v. Mabus, 910 So.2d 486, 488(¶ 7) (Miss.2005) (citing Mauck v. Columbus Hotel Co., 741 So.2d 259, 269(¶ 32) (Miss.1999)).
¶ 27. We have already concluded that the county court judge did not abuse his discretion in awarding punitive damages to Gordon; thus, we likewise conclude that the county court judge did not abuse his discretion in awarding Gordon attorney's fees. There is no merit to this issue.
¶ 28. The dissent suggests that, once we affirmed the grant of attorney's *772 fees, it became incumbent upon us to then determine the reasonableness of the amount of attorney's fees that were awarded by the trial court even though the reasonableness of the amount of attorney's fees has not been raised as an issue either in the trial court or in the issues presented on appeal.
¶ 29. In his brief, Puckett states the attorney's fees issue as follows: "Whether the County Court Judge erred in awarding attorney['s] fees to Trey Gordon?" We quote verbatim from his brief his entire argument in support of this issue:
There were two theories by which the Plaintiff requested attorney [sic] fees and only was [sic] supported by the County Court Judge's findings of fact. The Judge adopted the Plaintiff's proposed [sic] almost verbatim. The judge awarded attorney [sic] fees based solely on the award of punitive damages. The findings of fact do not support an award of attorney's fee [sic] based on an open account per § 11-53-81. Further, Trey Gordon is an individual roofer not a credit card company, banking institution, or other entity in the practice of extending credit. Trey Gordon did not extend credit as he did not have credit to extend. He entered into an agreement to repair a home, period. Trey Gordon was paid in the normal course of business in the construction industry, paid on demand or completion of work. This was not an open account case. As Russell Puckett was justified in his actions in regards to the alleged assault, punitive damages were not therefore warranted. Since punitive damages were [sic] not warranted, neither are attorney [sic] fees.

(Emphasis added).
¶ 30. Further, in his appellate brief to the circuit court, Puckett presented verbatim the same argument that is quoted above. In his proposed findings of fact to the county court, Puckett did not challenge the grant of attorney's fees on the basis that they were excessive or on the basis that Gordon's invoice for attorney's fees was not sufficiently particularized.[7] Had Puckett deemed the amount of the award excessive, it was incumbent upon him to make a specific objection along that line so that the trial court would have had an opportunity to consider the objection. Therefore, on these facts, we see no reason to remand the attorney's fee issue for further proceedings by the trial court. It is clear to us that the issue, as presented by Puckett on appeal, is whether this is an appropriate case for the award of attorney's fees, not whether the amount of the award is excessive or whether the invoice for attorney's fees is sufficiently particularized.
¶ 31. THE JUDGMENT OF THE WARREN COUNTY CIRCUIT COURT IS AFFIRMED IN PART AND REVERSED AND RENDERED IN PART AS FOLLOWS: THE AWARD OF NOMINAL COMPENSATORY DAMAGES IN THE AMOUNT OF $100, PUNITIVE DAMAGES IN THE AMOUNT OF $2,500, AND ATTORNEY'S FEES IN THE AMOUNT OF $8,301.25 IS AFFIRMED; THE AWARD OF $17,603.65 FOR THE BREACH OF CONTRACT CLAIM IS REVERSED AND RENDERED. *773 ALL COSTS OF THIS APPEAL ARE ASSESSED TWO-THIRDS TO THE APPELLANT AND ONE-THIRD TO THE APPELLEE.
MYERS, P.J., BARNES, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR. CARLTON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. KING, C.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY LEE, P.J. GRIFFIS, J., NOT PARTICIPATING.
KING, C.J., Concurring in Part, Dissenting in Part:
¶ 32. I concur with the majority opinion, except as to the issue of the awarding of attorney's fees, and therefore, I write separately on that issue. The majority position on this question would seem to be succinctly set forth in the following sentence: "We have concluded that the county court judge did not abuse his discretion in awarding punitive damages to Robert Gordon; thus, we likewise conclude that the county court judge did not abuse his discretion in awarding Gordon attorney's fees." Such a statement would seem to imply that where the imposition of punitive damages is found not to be an abuse of discretion, then axiomatically any amount of attorney's fees awarded cannot be an abuse of discretion. I find myself both unable and unwilling to embrace that position.
¶ 33. There is no argument that the court having awarded punitive damages to Gordon as the prevailing party on the assault claim was also authorized to award to him reasonable attorney's fees on that claim. United Am. Ins. Co. v. Merrill, 978 So.2d 613, 636(¶ 117) (Miss.2007) (finding that reasonable attorney fees are justified where the jury awards punitive damages). However, the party requesting an award of attorney's fees bears the burden of providing evidence to support the amount requested. See Erickson v. Smith, 909 So.2d 1173, 1182(¶ 26) (Miss.Ct.App.2005) (holding that an award of attorney's fees must be based on credible evidence). In proving his claim for attorney's fees, Gordon submitted bills from his attorney which totaled, $8,301.25. These bills covered all of the matters contested between Gordon and Russell Puckett in this case. The trial court, which found for Gordon on all of the claims in this case, awarded Gordon the entire $8,301.25 requested in attorney's fees. The submitted bills do not differentiate between the time and effort spent on the assault claim and the time and effort spent on the breach of contract claim. Therefore, the full attorney's bill of $8,301.25 of necessity also included payment for work done in seeking payment of the $17,603.65 breach of contract claim.
¶ 34. While Gordon prevailed in the trial court on the breach of contract claim, he has not prevailed on that claim in this Court. Indeed, this Court has reversed and rendered the award of $17,603.65 to Gordon for breach of contract because Mississippi Code Annotated section 73-59-9-(3)(Rev.2008) specifically bars his pursuit and recovery on the breach of contract claim.
¶ 35. A party who does not prevail on an issue has no entitlement to an award of attorney's fees for the failed pursuit of that issue. A & F Properties, LLC v. Lake Caroline, Inc., 775 So.2d 1276, 1283 (¶¶ 22-29) (Miss.Ct.App.2000) (finding that "the parties were entitled only to [attorney's] fees for enforcing the specific contract provisions on which they prevailed"). Gordon did not prevail upon his breach of contract claim; therefore, he was not entitled to recover the attorney's fees spent in pursuit of that failed claim. To make such *774 an award under these circumstances is by definition an abuse of discretion.
¶ 36. Because I believe this to be an abuse of discretion, I would affirm the decision to award attorney's fees for the work done solely on the assault claim, and exclude the cost of all work done on the breach of contract claim. To this end, I would return this case to the trial court with instructions to award attorney's fees only for the work related solely to the assault claim.
LEE, P.J., JOINS THIS OPINION.
NOTES
[1] Neither Gordon nor the county court identified the claim as a breach of contract claim. However, Gordon's pleading makes it clear that that is the type of claim involved.
[2] For approximately forty years, Puckett operated a business wherein he sold antiques and collectibles from his home. Feld House is over 100 years old and is listed on the National Register of Historic Places.
[3] Puckett had previously done business with Gordon, as he had hired Gordon to make repairs to Feld House in March 2005.
[4] Karen Gordon, Gordon's wife, also testified about how this incident has affected Gordon. She stated that Gordon becomes very easily agitated and is not the person that he was prior to this incident.
[5] Puckett made it clear that the roof did not leak following the repairs that Gordon made the second time.
[6] According to Gordon, Antoine served as the general contractor for the project.
[7] At the conclusion of the trial, the county court judge advised the parties that he was awarding $8,301.25 in attorney's fees. Thereafter, Puckett's counsel asked the county court judge to make findings of fact on his ruling. The court then directed the parties to submit findings of fact and advised them that the court would "accept, reject, or modify the findings to the extent that [the court] deem[ed] fit and proper." As stated, at no point in the proceedings did Puckett challenge the amount of the award.