# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CA-02100-SCT

*MISSISSIPPI DEPARTMENT OF*
*TRANSPORTATION*

*v.*

*MARETHA A. JOHNSON*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/12/2002 |
| TRIAL JUDGE: | HON. RICHARD D. BOWEN |
| COURT FROM WHICH APPEALED: | PRENTISS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | DANA GAIL DEATON |
| | CHRIS H. DEATON |
| ATTORNEYS FOR APPELLEE: | BO RUSSELL |
| | FRANK A. RUSSELL |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND RENDERED - 05/13/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### EN BANC.

### CARLSON, JUSTICE, FOR THE COURT:

¶1. The Mississippi Department of Transportation (MDOT) appeals from an adverse judgment entered by the Circuit Court of Prentiss County pursuant to a bench trial. Finding that the circuit court's judgment is unsupported by the record and contrary to law, we reverse the judgment and render judgment here in favor of MDOT.

### FACTS AND PROCEEDINGS IN THE CIRCUIT COURT

¶2. On the evening of August 29, 1999, Melissa Crump (Crump) was driving her vehicle in a southerly direction on four-lane U.S. Highway 45 in Prentiss County. The four passengers in Crump's vehicle that evening were Maretha A. Johnson (Johnson), Jessica Russell (Russell), Brian Turner (Turner) and Julie

Buffaloe (Buffaloe). As this vehicle and its five occupants traveled down the highway, the vehicle collided with a cow[1] standing in the middle of the road. Crump testified that she did not see the animal until a second before impact and that she was unable to stop or avoid collision with the animal. As a result of this accident, Johnson was severely injured. Due to the severity of her injuries, Johnson was comatose, spent several weeks in the hospital, and underwent extensive rehabilitative therapy.

¶3. Johnson sued Bonnie and Glen Mauney, individually and doing business as Hatchie River Farms (Mauney)[2] and James Dees in the Circuit Court of Prentiss County, Mississippi.[3] In her pleadings, Johnson alleged inter alia that Mauney was the owner of the cow, that Dees was the owner of the land adjacent to the accident scene, and that both Mauney and Dees were liable for negligently allowing the cow to escape and walk on to the highway. Johnson further alleged that the cow escaped from the fenced area near the accident site to graze on hay which Mauney had stored outside of the fence on MDOT's right-of-way. Specifically, Johnson alleged that during a drought, Mauney negligently stored approximately ten large round bales of fertilized Bermuda hay outside of Dees's fence, that Dees was negligent in maintaining his fence line, and that the cow which caused the accident was enticed to escape her confinement during this drought in order to have access to the hay on the other side of the fence. Through additional amendments, Russell, Turner and Buffaloe were subsequently allowed to join as party plaintiffs and MDOT was joined

---

[1]References are made in the record and briefs to the animal being a "cow," a "bull,"a "cow or bull,"a "Brahma cow," etc. It appears from the record, including the photographs, that the animal literally exploded upon impact. For clarity, we will refer to the animal simply as a "cow."

[2]This name also appears in the record as "Mooney."

[3]Johnson's mother initially commenced this lawsuit as the duly appointed conservator of Johnson's person and estate, but after the chancery court allowed the conservatorship to be closed, Johnson was substituted as a party plaintiff and prosecuted this litigation in her own name.

as a party defendant. Upon MDOT being joined as a party defendant, Johnson amended her pleadings to allege inter alia that it was the duty of MDOT to keep the right-of-way free of any encroachments and that the presence of the hay was a proximate cause of her injuries. During the discovery process, all claims asserted by Russell, Turner and Buffaloe were dismissed, and settlements were reached with all defendants except MDOT.

¶4. MDOT requested via motions (1) that it receive credit for the total amount of monies recovered by Johnson in her settlement with the other defendants, and (2) that the testimony of Johnson's economist be excluded. There were no pretrial rulings by the trial court on these motions and Johnson's economist was eventually allowed to testify during the bench trial.

¶5. Johnson then proceeded to a bench trial solely against MDOT. At trial, testimony was provided by Johnson, Crump, and Russell, who was also a passenger in the vehicle and daughter of one of Johnson's attorneys. Russell testified to events surrounding the accident, and she likewise testified that she returned to the site the next morning to take photographs of the gate near the accident site. Those photographs were admitted into evidence. Mauney testified that following the accident, he checked his cattle and the fence around the property and that the fence was intact and no cattle were missing.

¶6. Testimony revealed that Mauney stored approximately ten large round bales of fertilized Bermuda hay several feet outside of the fenced pasture where he kept approximately 30 head of cattle. The hay was located at least 100 feet off the roadway, but in MDOT's right-of-way. The hay remained on the right-of-way for approximately three months when the entire area was experiencing a drought.

¶7. At the conclusion of the bench trial, the trial judge directed each party to submit proposed findings of fact and conclusions of law. The trial judge eventually adopted in toto Johnson's proposed findings of

3

fact and conclusions of law and assessed Johnson's damages at $1,500,000.00 and apportioned fault as follows: 40% to Crump, 40% to Mauney, and 20% to MDOT. The circuit court entered judgment for Johnson in the amount of $300,000.00 against MDOT (representing 20% of $1.5 million). MDOT's Motion for a New Trial or, Alternatively, to Alter or Amend Judgment was denied. This appeal ensued.

**STANDARD OF REVIEW**

¶8.    "A trial judge's finding is entitled to the same deference as a jury and will not be reversed unless manifestly wrong. A reviewing court cannot set aside a verdict unless it is clear that the verdict is a result of prejudice, bias, or fraud, or is manifestly against the weight of credible evidence." ***Bradley v. Tishomingo County***, 810 So.2d 600, 602-03 (Miss. 2002) (citing ***R.C. Constr. Co. v. Natl. Off. Sys., Inc.***, 622 So.2d 1253, 1255 (Miss. 1993). However, we have also stated that when the trial judge is sitting as the finder of fact, and chooses to adopt in toto a party's proposed findings of fact and conclusions of law, we will conduct a de novo review of the record. ***Holden v. Frasher-Holden***, 680 So.2d 795, 798 (Miss. 1996).

> This Court will not set aside such findings [of the trial judge] on appeal unless they are manifestly wrong. *Id.* Where the [trial judge] has failed to make his own findings of fact and conclusions of law, this Court will "review the record de novo." ***Brooks v. Brooks***, 652 So.2d 1113, 1118 (Miss. 1995)(chancellor did not make his own findings, rather adopted litigant's findings and applied wrong legal standard).

680 So.2d at 798. Here the proposed findings of fact and conclusions of law which Johnson's lawyer mailed to the judge are identical to the findings of fact and conclusions of law which the judge signed on November 12, 2002. There can be no doubt that the trial judge adopted and entered verbatim Johnson's proposed findings of fact and conclusions of law. The only difference is that in the version signed by the

4

trial judge, he "filled in the blanks" for the percentages of fault apportioned to Crump, Mauney and MDOT. Additionally, our standard of review is de novo on questions of law. ***Busick v. St. John***, 856 So.2d 304, 308 (¶ 7) (Miss. 2003) (citing ***Miss. Farm Bureau Cas. Ins. Co. v. Curtis***, 678 So.2d 983, 987 (Miss. 1996); ***Seymour v. Brunswick Corp.***, 655 So.2d 892, 895 (Miss. 1995)). Thus, consistent with ***Holden***, we today conduct a de novo review not only of the law, but also the trial judge's findings of fact.[4]

¶9.     While stated differently, Johnson and MDOT in essence agree as to the appropriate issues for us to consider in today's appeal: Did the trial judge err in (1) adopting verbatim Johnson's proposed findings of fact and conclusions of law (and were these findings of fact manifestly wrong); (2) failing to apply the active/passive dichotomy fundamental to Mississippi negligence law; (3) allowing Jessica Russell to offer opinion testimony as to the type animal involved in the vehicular accident; (4) finding the existence of a duty and breach of that duty on the part of MDOT; (5) concluding that Johnson was totally disabled and allowing Johnson's economist to testify to the expected net cash value of lost income on the basis of total disability; (6) failing to reduce the amount of the total judgment by applying credit for monies received from the settling defendants; and, (7) entering a final judgment in excess of the statutory cap as set out under the

---

[4]In applying our de novo review of a trial judge's findings of fact based on a verbatim adoption of a party's proposed findings of fact and conclusions of law (FOFCOL), we are in no way condemning the long-accepted practice of a trial judge's directing the parties to submit proposed FOFCOL. Even though our State has come a long way in providing support staff for our trial judges, we acknowledge that our trial judges still work under severe time constraints based on their crowded dockets. Certainly when parties submit separate FOFCOL, the trial judge and that judge's staff attorney/law clerk will have excellent models from which to work. Today's computer technology allows the trial court to organize its own FOFCOL from those provided by the parties. We simply remind our trial courts that when they feel compelled to adopt verbatim a party's proposed FOFCOL, then we are likewise compelled to apply a de novo standard of review of the trial court's findings of fact as opposed to a deferential standard of review.

provisions of the Mississippi Tort Claims Act (MTCA), Miss. Code Ann. §§ 11-46-1 et seq. (Rev. 2002).[5] Finding one issue dispositive of this appeal, we need address only that issue.

### I. WHETHER THE TRIAL COURT ERRED WHEN IT FAILED TO APPLY THE ACTIVE/PASSIVE DICHOTOMY FUNDAMENTAL TO MISSISSIPPI NEGLIGENCE LAW?

¶10. MDOT contends that the trial judge erred by finding MDOT was negligent in the underlying action. In the complaint, Johnson alleged that MDOT was negligent due to its failure to have the bales of hay removed from the right-of-way. Johnson's logic follows that because MDOT failed to have the bales of hay removed from the right-of-way during the drought period, the cow was enticed to escape from the fenced pasture to eat the hay and then wander onto the roadway, resulting in the collision with the vehicle in which Johnson was a passenger.

¶11. In order to prevail on a negligence claim against MDOT, Johnson must:

> establish by a preponderance of the evidence each of the elements of negligence: duty, breach, causation and injury. *Leflore County v. Givens*, 754 So.2d 1223, 1230 (Miss. 2000) (citing *Lovett v. Bradford*, 676 So.2d 893, 896 (Miss. 1996)). In Mississippi, a plaintiff may espouse one of three theories in support of a claim of negligence such as this: (1) that the defendant's own negligence created a dangerous condition which caused plaintiff's injury; (2) that the defendant had actual knowledge of the danger she faced as an invitee or (3) that based upon the passage of time, the defendant should have known about the dangerous condition caused by another party and if defendant had acted reasonably, i.e., constructive knowledge of that condition should be imputed to that defendant. *K-Mart Corp. v. Hardy ex rel. Hardy*, 735 So.2d 975, 980 (Miss. 1999) (citing *Downs v. Choo*, 656 So.2d 84, 86 (Miss. 1995); *Munford, Inc. v. Fleming*, 597 So.2d 1282, 1284 (Miss. 1992)). The plaintiff bears the burden of presenting significant probative evidence that the defendant was not only negligent, but also that such negligence was the proximate cause of the dangerous condition that resulted in the plaintiff's injury. *Id.*

---

[5]While there is little mention in the record of the MTCA, it is obvious that this case proceeded to a bench trial as to MDOT only, under the provisions of the MTCA.

*Miss. Dep't of Transp. v. Cargile*, 847 So.2d 258, 262 (¶ 11) (Miss. 2003). It is the constructive knowledge theory upon which Johnson relies.

¶12. In placing a duty upon MDOT to keep the right-of-way clear, Johnson relies on Miss. Code Ann. § 65-1-169 (Rev. 2001), which states in pertinent part: "The State Highway Commission is hereby authorized to maintain property acquired for highway purposes free and clear of any obstruction, encroachment or any other use not authorized by the commission."

¶13. Johnson also relies on the testimony of Neal Peach, MDOT's district maintenance supervisor, to establish a duty. Peach testified as follows:

Q. Why is that law there, because it would be a danger to motorists?

A. Well, highway right-of-way belongs to the State of Mississippi and we are charged with keeping that right-of-way clear of encroachments. Every encroachment is not necessarily a danger to the traveling public. It's just the fact that we own the right-of-way and we are charged with that legal responsibility.

Q. To remove it. And one of those things was hay; is that right?

A. Yes.

Q. And y'all had a duty to remove that from the right-of-way. Is that correct?

A. If we knew it was on the right-of-way, yes, sir.

Undisputed testimony established that the bales of hay were at least 100 feet off the highway and adjacent to the property owner's fence line. Peach's testimony further revealed that there is a difference between an encroachment and what MDOT considers a hazard; specifically, MDOT recognizes a "clear zone" on this particular roadway to be 30 feet from the edge of the pavement and that "[a]nything past the 30 feet is not considered to be a hazard." Indeed, we have stated:

7

> Motorists do not have the unlimited right to use every foot of a highway right-of-way and the Highway Commission is under no duty to furnish broad shoulders along every stretch of highway for the use of the motoring public.

*Milam v. Gulf, Mobile & O.R. Co.*, 284 So.2d 309, 311 (Miss. 1973). While MDOT had authorization to have the encroachment removed, MDOT did not have a duty to do so. The hay did not pose a direct hazard to traveling motorists because the bales were located beyond the "clear zone."

¶14. Further, even if MDOT had a duty to have the hay removed, the "Mississippi rule of law regarding independent, intervening causes more or less establishes an active/passive dichotomy." *Glorioso v. Young Mens Christian Ass'n*, 556 So. 2d 293, 296 (Miss. 1989). In *Glorioso*, we refused to impose liability upon a party whose actions or omissions were passive in nature where another party actively placed into motion an intervening cause which lead unbroken in sequence to an injury. *See also Saucier v. Walker*, 203 So. 2d 299 (Miss. 1967), *Stewart v. Kroger Grocery Co.*, 198 Miss. 371, 21 So. 2d 912 (1945); *Louisville & N. Railroad Co. v. Daniels*, 135 Miss. 33, 99 So. 434 (1924).

¶15. In *Glorioso*, a young boy was killed by a large pole left lying on the ground in the park by the city. The young boy and the other members of his baseball team were offered the prize of ice cream by a YMCA counselor to the one who could stay on the pole the longest while the counselor and others shook the pole. The shaking of the pole caused it to become extracted from the small indentation where it had been positioned and to also roll down the hillside, crushing and killing the boy. This Court found that even if the city had been negligent in placing the pole, the act of shaking the pole was an independent, intervening cause. In finding that the city was not liable for the death, we said:

> Although one may be negligent, yet if another, acting independently and voluntarily, puts in motion another and intervening cause which efficiently thence leads unbroken in sequence to the injury, the later is the proximate cause and the original negligence is

8

relegated to the position of a remote and, therefore, a non-actionable cause. Negligence which merely furnishes the condition or occasion upon which injuries are received, but does not put in motion the agency by or through which the injuries are inflicted, is not the proximate cause thereof.

*Glorioso*, 556 So.2d at 296 (quoting *Miss. City Lines, Inc. v. Bullock*, 194 Miss. 630, 13 So.2d 34, 36 (1943)).

¶16. In contrast, the record here is completely void of any active negligence by MDOT. Assuming arguendo that MDOT was negligent by permitting the hay to stay on the right-of-way, there was a series of independent, intervening actions which lead to the accident. MDOT did not place the hay on the right-of-way nor did it place the cow in the highway. At most, MDOT "merely allowed hay to remain on its right-of-way at a safe distance from the highway," a condition which was not established to be a proximate cause of the accident.

¶17. The trial court found that Mauney's pasture was insufficient for feeding the cattle and that one of his cows broke though the gate, ate the hay, then stood on the roadway where it was struck by Crump's vehicle. However, there was no evidence that the cow belonged to Mauney, who testified that the animal did not belong to him and that he was not missing any of his cows. Crump also testified that she was driving late at night on an unlit highway slightly in excess of the posted speed limit and that she did not see the cow until the cow was about twelve feet away.

¶18. This Court acknowledges that the injuries sustained by Johnson were indeed severe. Johnson was hospitalized for over two months, has incurred medical bills in excess of $215,000, has sustained lost wages and wage-earning capacity, has experienced immense pain and suffering, and has diminished use of her right arm. However, even as here where grievous injuries and damages have been incurred, not every person

injured will have a legal remedy against every defendant. In this instance, MDOT did not have a duty to remove the hay. Even if such a duty existed, there has been no showing that MDOT's permitting the hay to remain in the right-of-way was a proximate cause of Johnson's injuries. A meticulous review of the record in today's case reveals that, as to MDOT, evidence of duty, breach of duty and causation is woefully lacking.

## CONCLUSION

¶19.   We find that MDOT did not have a duty to have the encroachment removed from its right-of-way since the hay was located beyond the "clear zone" and did not pose a direct hazard to the traveling public. Even if such a duty existed, Johnson failed to prove that any action or inaction of MDOT was a proximate cause of the motor vehicle accident from which she sustained her serious injuries. For these reasons, this Court reverses the judgment entered against MDOT by the Circuit Court of Prentiss County, and renders judgment here in favor of MDOT, finally dismissing Maretha A. Johnson's complaint and this action with prejudice.

¶20.   **REVERSED AND RENDERED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., CONCUR. DICKINSON, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY EASLEY AND GRAVES, JJ. DIAZ AND RANDOLPH, JJ., NOT PARTICIPATING.**

**DICKINSON, JUSTICE, DISSENTING:**

¶21.   The single question in this case is whether injury to the plaintiff was a foreseeable consequence to MDOT's breach of its duty to maintain the right-of-way. The majority believes not. I disagree.

10

¶22.    Liability for negligence lies where foreseeable harm was suffered by the plaintiff as a proximate result of the breach by defendant of a duty.  The only question in reasonable dispute is whether the harm suffered by Johnson was reasonably foreseeable to MDOT.

¶23.    A discussion of foreseeability should, I think, begin with Chief Judge Cardozo's familiar[6] opinion in *Palsgraf v. Long Island R. Co.*, 248 N.Y. 339, 162 N.E. 99 (1928).   Finding the plaintiff's damages to be unforeseeable, Judge Cardozo stated:

> The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension. . . . It was not necessary that the defendant should have had notice of the particular method in which an accident would occur, if the possibility of an accident was clear to the ordinary, prudent eye.

*Id.* 248 N.Y. at 344 (citations omitted).

¶24.    Foreseeability (the risk reasonably to be perceived), to the majority, is a question of whether the hay, itself, posed a direct, foreseeable, danger to motorists.  The majority points out that the hay was approximately 100 feet from the roadway, in the "clear zone," posing no "direct hazard" to the traveling public.  I agree.  However, risk and foreseeability cannot be examined in a vacuum.  Risk must be assessed and evaluated in light of the circumstances actually or constructively known by MDOT.  What is foreseeable depends on what reasonably might happen under the circumstances, not what probably will happen.

---

[6]The case is familiar because it is used by law schools across the nation to demonstrate the principle of foreseeability.  Curiously, this Court has never adopted *Palsgraf* and has never cited it in a personal injury case.

¶25. I agree that the risk of a motorist crashing into the hay was not foreseeable. I also notice that a motorist did not run into the hay in this case. What did happen, it seems to me, was a foreseeable risk; the risk that, left outside the fence, the hay would lure cows to breach the fence and wander upon the roadway.

¶26. I must admit that, during the fertile, rainy season, cows can be expected to concentrate on the abundance of grass available in the pasture. Cows under such conditions will generally ignore the fence and all that is outside it. Thus, little danger is posed by placing hay on the highway side of the fence.

¶27. But what is one to think a cow -- or 30 cows -- likely to do during a drought when, looking up from the bare ground, it observes through the fence -- and smells -- ten large, round bales of fertilized, Bermuda hay. It seems to me one should expect the cow to do what it can to get to the hay. And should one of them succeed (as cows often do), shouldn't MDOT expect that the cow might wander upon the highway and cause harm to a motorist such as Johnson?[7] Stated differently, I see no difference on the one hand in leaving a fence unrepaired, or a gate open, so that cows may get out, and on the other, leaving the hay on the ground just outside the fence during a drought, luring the cows out. In either case, the foreseeable risk is that a cow will get upon the roadway and a motorist will be injured. The only difference is that keeping the fence repaired and the gate closed is the farmer's responsibility, and keeping the hay off the MDOT right-of-way is MDOT's responsibility.

¶28. The majority states that, to prevail, Johnson may establish negligence by showing: "(1) that the defendant's own negligence created a dangerous condition which caused plaintiff's injury; (2) that the defendant had actual knowledge of the danger she faced as an invitee or (3) that based upon the passage

---

[7]So obvious and foreseeable is the danger of loose cows causing automobile accidents, that the Legislature places the burden of proof on the owner to prove lack of negligence. *See* Miss. Code Ann. § 69-13-111 (Rev. 2001).

of time, the defendant should have known about the dangerous condition caused by another party and if defendant had acted reasonably, i.e., constructive knowledge of that condition should be imputed to that defendant." *K-Mart Corp. v. Hardy ex rel. Hardy*, 735 So.2d 975, 980 (Miss. 1999) (citing *Downs v. Choo*, 656 So.2d 84, 86 (Miss. 1995); *Munford, Inc. v. Fleming*, 597 So.2d 1282, 1284 (Miss. 1992)). It is the constructive knowledge theory upon which Johnson relies." This recitation of the law is, in my view, precisely correct and on point. However, the subject of constructive knowledge is inexplicably abandoned.

¶29. The record establishes that MDOT was aware of the presence of the cows and the duration and intensity of the drought. The hay lay in plain view to MDOT for three months, allowing more than adequate time for discovery and correction of the dangerous condition. Thus, the requirements of *K-Mart Corp. v. Hardy* are easily satisfied.

¶30. In my view, the independent, intervening cause analysis provides no protection to MDOT. *Glorioso*, discussed by the majority, involved an act of negligence on the part of the city, which was absolved because of a later act of negligence by counselors and others who shook the pole, leading to the death of the child. Here, the last negligent act was MDOT's failure to clean up the hay under conditions which should have placed MDOT on notice that the hay would lure the cows through the fence and onto the roadway, creating a hazard for motorists.

¶31. Under the circumstances of this case, I would affirm the judgment against MDOT. **EASLEY AND GRAVES, JJ., JOIN THIS OPINION.**