910 So.2d 1205 (2005)
Michelle McALLISTER and Kayla McAllister, a Minor Child, by Michelle McAllister, Next Friend, Wrongful Death Heirs of David McAllister, Deceased, Appellants
v.
FRANKLIN COUNTY MEMORIAL HOSPITAL, Appellee.
No. 2004-CA-00492-COA.
Court of Appeals of Mississippi.
September 6, 2005.
*1207 Wayne Dowdy, Magnolia, attorney for appellant.
Lane B. Reed, Meadville, James N. Bullock, Jackson, attorneys for appellee.
Before LEE, P.J., IRVING and CHANDLER, JJ.
LEE, P.J., for the Court.

PROCEDURAL HISTORY
¶ 1. On March 29, 2000, Michelle McAllister and Kayla McAllister, the heirs of David McAllister, filed suit in the Circuit Court of Franklin County, Mississippi, under the Mississippi Tort Claims Act, Mississippi Code Annotated § 11-46-1 to 23 (Rev.2002), against Franklin County Memorial Hospital (the Hospital). The complaint alleged that the Hospital was negligent in its examination, treatment, and diagnosis of David McAllister, contributing to his death.
¶ 2. A bench trial was held on February 18, 2004, and on February 26 the court rendered a decision ruling in favor of the Hospital on the McAllisters' claims. The McAllisters now appeal to this Court, asserting the following: (1) whether the Hospital's examination, diagnosis, and treatment of David McAllister failed to meet the standard of care and (2) whether the Hospital's failure to meet the standard of care caused or contributed to McAllister's death.

FACTS
¶ 3. David McAllister was a thirty-four year old truck driver whose wife, Michelle, was employed as a nurse by the Franklin County Memorial Hospital. On Sunday, February 28, 1999, at 2:08 p.m. Michelle took David to the emergency room at the Hospital because David complained of chest pains that he was having that day. David stated that he could feel the pain in his neck, and that the pain was making his head feel "funny." David also stated that the "pain comes and goes."
¶ 4. The Hospital's record reflected that, at 3:45 p.m. on the afternoon of February 28, 1999, David was seen by Dr. Benjamin Yarborough. Dr. Yarborough is an employee of the Hospital, and he was the on-call emergency physician on that date. Dr. Yarborough's notes from that day indicated that David had complained of a burning sensation in the epigastric region. Dr. Yarborough's notes further indicated that David had high stress levels, was a heavy smoker, and that he was not, at that time, taking any medications to reduce his blood pressure. The staff of the Hospital performed a non-diagnostic EKG on David. In response to a question by David regarding whether he should see a cardiologist, Dr. Yarborough stated that David was experiencing reflux; therefore, he did not need to see a cardiologist. According to Dr. Yarborough's treatment notes, David was diagnosed with hypertension and abdominal pain. Dr. Yarborough prescribed Prilosec for David. David was discharged at 3:50 p.m. on the same day, approximately five minutes after the emergency room physician initially saw him.
*1208 ¶ 5. On May 11, 1999, approximately two and a half months after his emergency room treatment at the Hospital, David drove his eighteen-wheeler truck to a freight terminal in Madison County. As David was waiting for his truck to be loaded at the terminal, he complained to an employee at the terminal that he was experiencing pain due to his "reflux" condition. At this point, David went to his truck to get a Prilosec, which Dr. Yarborough had earlier prescribed. Later that day, while preparing to load his truck, David fell down and died almost immediately.
¶ 6. An autopsy revealed that David died due to acute myocardial infarction and coronary artery disease. The autopsy report also indicated that David had suffered two previous myocardial infarctions.

STANDARD OF REVIEW
¶ 7. In an attempt to obtain de novo review, the McAllisters contend that the judge in the case sub judice failed to make specific findings of fact. Indeed, the McAllisters' entire brief is predicated on a de novo review of the record before this Court. In Tricon Metals & Services, Inc. v. Topp, 516 So.2d 236 (Miss.1987), the Mississippi Supreme Court reversed the chancellor's ruling because the chancellor did not make specific findings of fact, and the Court ruled that such failure constituted an abuse of discretion. The supreme court determined that in his ruling the chancellor only made decisions and failed to present any supporting explanation for his findings.
¶ 8. In the case sub judice, the circuit court judge summarized the evidence presented at trial and concluded that the physician's actions were not the proximate cause of David's death. After reviewing the expert testimony presented by both sides, the court opined that "[t]he expert testimony for the plaintiffs on these issues was not persuasive to the court. The expert testimony for the defendant on these issues was persuasive to the court. Therefore, the court, sitting as the finder of fact and law, finds for the defendant."
¶ 9. We do not agree that the trial court failed to make sufficient findings of fact. Accordingly, we proceed with our established standard of review.
¶ 10. It is well settled that, "[a] trial judge's finding is entitled to the same deference as a jury and will not be reversed unless manifestly wrong." Mississippi Dep't of Transp. v. Johnson, 873 So.2d 108, 111 (¶ 8) (Miss.2004). "A decision of a circuit judge sitting without a jury falls under the manifest error standard of review." Sweet Home Water and Sewer Ass'n v. Lexington Estates, Ltd., 613 So.2d 864, 871 (Miss.1993); Kight v. Sheppard Bldg. Supply, Inc., 537 So.2d 1355, 1358 (Miss.1989). Findings of a trial judge sitting without a jury receive the same deference from appellate courts as do chancery findings. Johnson, 873 So.2d at 111 (¶ 8) (citing Brooks v. Brooks, 652 So.2d 1113, 1118 (Miss.1995)).

DISCUSSION OF ISSUES

I. DID THE HOSPITAL FAIL TO MEET THE STANDARD OF CARE IN TREATING DAVID MCALLISTER?
¶ 11. In arguing that the trial court erred in its verdict for the Hospital, the McAllisters argue that they presented a prima facie case of medical malpractice against the Hospital and successfully proved that the hospital committed malpractice. Furthermore, the McAllisters contend that the expert testimony presented by the Hospital addresses a subjective standard of care, and not an objective standard. They argue "[s]ince there is *1209 little or no evidence about what Dr. Yarborough did for David McAllister, it should be accepted that [the Hospital] failed to meet the standard of care." The fallacy of the latter argument needs no comment.
¶ 12. To present such a prima facie case in this circumstance requires the following: first, establishing the existence of a doctor-patient relationship and the duty associated with that relationship; second, establishing the standard of care and that the Hospital failed to meet that standard of care; third, proving that the Hospital's failure to meet the standard of care caused or contributed to David McAllister's death; and fourth, proving the extent of damages. McCaffrey v. Puckett, 784 So.2d 197, 206 (¶ 33) (Miss.2001). The Hospital does not dispute that these are the elements required for a prima facie case of medical malpractice.
¶ 13. The McAllisters contend that at trial they successfully proved that the Hospital committed malpractice. As to the first element required to establish a prima facie case of medical malpractice, the McAllisters established the existence of a doctor-patient relationship between the Hospital through its agent, the emergency room physician, and David.
¶ 14. Both parties contest whether the McAllisters proved that the Hospital failed to meet the standard of care in treating David. In medical malpractice actions, the plaintiff must utilize expert testimony to establish a failure to adhere to the minimum standard of care. Kelley v. Frederic, 573 So.2d 1385, 1387 (Miss.1990); Palmer v. Biloxi Reg'l Med. Ctr., Inc., 564 So.2d 1346, 1354-55 (Miss. 1990); Giuffria v. Concannon, 851 So.2d 436, 438 (¶ 16) (Miss.Ct.App.2003). The geographic location of where an expert lives or practices his profession has no relevance regarding the qualification of that person as an expert witness. Hall v. Hilbun, 466 So.2d 856, 874 (Miss.1985) (superseded by statute on other grounds).
¶ 15. "Mississippi physicians are bound by nationally-recognized standards of care; they have a duty to employ `reasonable and ordinary care' in their treatment of patients." Palmer, 564 So.2d at 1354. Our supreme court set out the standard of care in cases of medical malpractice in the case of Hall v. Hilbun.
[G]iven the circumstances of each patient, each physician has a duty to use his or her knowledge and therewith treat through maximum reasonable medical recovery, each patient, with such reasonable diligence, skill, competence, and prudence as are practiced by minimally competent physicians in the same specialty or general field of practice throughout the United States, who have available to them the same general facilities, services, equipment and options.
Id. at 873.
¶ 16. The McAllisters' expert witness, Dr. Jack Kareff, testified that, based on his examination of emergency room records and David's autopsy, the care rendered to David at the Hospital on February 28, 1999, was below the standard of care. Dr. Kareff testified that "at the very minimum, in addition to the EKG, the MIP or myocardial injury panel would meet the standard of care." Dr. Kareff testified that he "would have also ordered a chest x-ray, the basic metabolic panel and the complete blood count because this is a gentleman that should be admitted for observation."
¶ 17. This contrasts with the testimony provided by Drs. David Mulholland and Frederick Carlton, who both testified that Dr. Yarborough's examination and treatment of McAllister met the appropriate standard of care. As the trial judge stated *1210 in his opinion, the testimony of Drs. Mulholland and Carlton were persuasive, whereas Dr. Kareff's testimony was not. The trial judge, sitting in a bench trial as the trier of fact, has sole authority for determining the credibility of the witnesses. Rice Researchers, Inc. v. Hiter, 512 So.2d 1259, 1265 (Miss.1987). We do not agree that the trial judge committed error.
¶ 18. While not specifically contending that the trial court committed error in applying an improper legal standard, in their brief the McAllisters intimate that the standard of care presented by Drs. Mulholland and Carlton was an improper, subjective standard, whereas the standard of care presented by Dr. Kareff represented the proper, objective standard of care.
¶ 19. At the outset of his testimony, Dr. Carlton said his understanding of the standard of care was as follows: "And I understand that this is sort of a Mississippi definition. What the minimally competent physician would do under like or similar circumstances." Dr. Kareff's testimony, as quoted in paragraph sixteen of this opinion discussed what he, as a physician, would have done had he been treating David that day. Clearly, Dr. Kareff's testimony is subjective, for it does not address what a minimally competent physician in like circumstances would do. Dr. Mulholland's testimony regarding the standard of care was also subjective: "[The standard of care] is to perform a physical examto takeexcuse me. To take a history, to perform a physical examination, to procure whatever test you deem necessary, and to formulate an idea or hypothesis as to the patient's ailment, and to treat it appropriately." Like Dr. Kareff's testimony, Dr. Mulholland's definition revolved around the physician's discretion and best judgment. See, e.g., Bickham v. Grant, 861 So.2d 299, 302-04 (Miss.2003). However, there is no evidence in the record that, although presented with conflicting standards of care, the trial court applied the improper legal standard.
¶ 20. Issue I. lacks merit.

II. DID THE HOSPITAL'S ALLEGED NEGLIGENCE CAUSE OR CONTRIBUTE TO DAVID'S DEATH?
¶ 21. The McAllisters next argue that they successfully showed that David's death resulted from the Hospital's deviation from the appropriate standard of care. As discussed in Section I. of this opinion, we do not agree that the trial court erred in finding that the Hospital did not breach the appropriate standard of care. Again, we defer to the factual findings of the trial judge sitting without a jury unless the judge committed manifest error. Rice Researchers, Inc., 512 So.2d at 1264. Because we have found no error in the trial court's determination that the Hospital did not breach the appropriate standard of care, review of this issue is not necessary.
¶ 22. THE JUDGMENT OF THE FRANKLIN COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANTS.
KING, C.J., BRIDGES, P.J., IRVING, MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.