ISHEE, J.,
for the Court.
¶ 1. Following a collision at the intersection of U.S. Highway 45 and Mississippi Highway 145, which resulted in the death of Alexandra Reeves and Alex Shanks, Kimberly A. Reeves, Jerry Reeves, and Alex Shanks, Jr. (collectively referred to as “Reeves”) filed a wrongful death and personal injury action against the Mississippi Department of Transportation (MDOT) in the Circuit Court of Clarke County.[1] After a trial, the court found that the MDOT was immune from liability. Aggrieved by the court’s decision, Reeves appeals. They assert the following issues for this Court’s review: (1) whether the trial court erred in holding that the MDOT was immune from suit; (2) whether the trial court erred in holding that the MDOT had insufficient notice of a dangerous condition and/or intersection; and (3) whether the trial court erred in holding that Edward Carter, Jr. was the sole intervening and superceding act of negligence. Finding no error, we affirm.
FACTS
¶ 2. On June 15, 2000, at approximately 12:35 p.m., in Clarke County, Mississippi, Kimberly Reeves was traveling in a northerly direction on U.S. Highway 45 towards Meridian, Mississippi; Kimberly’s minor children, Morgan and Alexandra, were traveling with her. Edward Carter, Jr. was traveling in a southbound direction on Mississippi Highway 145 with two passengers: his friend, Alex Shanks, and his grandson, Lakendrick Carter. It was Carter’s first time to travel on this portion of Mississippi Highway 145, since the construction of the four-lane U.S. Highway 45 and the conversion of the old highway into Mississippi Highway 145.[2] When Carter reached the intersection of Mississippi Highway 145 with U.S. Highway 45, he failed to obey the stop sign, and he crossed over the southbound lane of U.S. Highway 45. Once Carter reached the median, he failed to yield to northbound traffic on U.S. Highway 45, and he collided with the driver’s side of Kimberly’s vehicle. The colli *886 sion thrust Kimberly’s vehicle into another lane, causing it to collide with another vehicle.
¶ 3. The collision ejected Kimberly and Alexandra from their vehicle, and they both received serious injuries. Alexandra, who was then two and one-half years old, died nine days after the accident. Shanks, who was seventy-one at the time of the accident, was also seriously injured. As a result of his injuries, he also died several days after the accident.
¶ 4. On December 12, 2001, Reeves filed a wrongful death and personal injury action against the MDOT in the Circuit Court of Clarke County. Reeves asserted that the MDOT breached its duty to design, construct, and maintain the subject roadways, including the traffic control devices, in a reasonably safe condition. Reeves further asserted that the MDOT knew of the dangerous condition of the subject intersection, but failed to provide reasonable safety features to alleviate or remove the dangerous condition. The MDOT maintained that Carter’s failure to yield was the sole cause of the accident. The MDOT also maintained that it was immune from liability pursuant to the provisions of Mississippi Code Annotated section 11-46-9(1) (Rev.2002).
¶ 5. A bench trial was held on December 13-15, 2004. During the trial, Carter testified that it was sunny and dry on the day of the accident, and that he had not been drinking or taking any medication that day. He further testified that he and Shanks were engaged in conversation as he approached the subject intersection. Carter remembered traveling through a “little curve” before the intersection, but did not remember seeing a “Curve Ahead” warning sign, a “Junction 45” sign, or a “Stop Ahead” sign. Carter testified that once he noticed the stop sign he was “right up on it” and was unable to stop. According to Carter’s testimony, he was driving the speed limit, 55 miles per hour, or slightly less, when he reached the intersection.
¶ 6. Officer Harrison Cook of the Mississippi Highway Patrol investigated the accident. He testified that Carter was cited for failure to yield the right-of-way. Officer Cook also testified that Carter admitted that he ran the stop sign and failed to yield the right of way in the median to the northbound traffic of U.S. Highway 45.
¶ 7. Sheriff. Todd Kemp of the Clarke County Sheriffs Department testified that accidents are a normal occurrence and are expected for a period of time after the opening of a new roadway. In order to warn the public about the hazards of the newly constructed U.S. Highway 45, Sheriff Kemp participated in a press conference organized by Edwin “Sharpie” Smith, Assistant District Maintenance Engineer for the MDOT, on July 23,1999. According to Sheriff Kemp’s records, sixteen accidents occurred at the intersection of U.S. Highway 45 and Mississippi Highway 145 from July 27, 1999 to June 15, 2000. Sheriff Kemp testified that the majority of those accidents were similar to the accident that occurred in this case. Sheriff Kemp further testified that, sometime prior to the accident in this case, he became concerned about the number of accidents at the intersection. He maintained that he voiced his concerns to the MDOT “on many occasions” by instructing his office to contact Smith’s office and to request that they “do something about [the] intersection.” Nonetheless, Sheriff Kemp could not recall when the MDOT was notified, who notified them, or how many times they were notified. Furthermore, he admitted that the dispatch records did not reflect any calls from the Clarke County Sheriffs Office to the MDOT. Sheriff Kemp also testified that when he did speak with Smith about *887 the accidents at the intersection they both agreed that the accidents were caused by driver error, i.e., people not yielding to traffic on U.S. Highway 45.
¶ 8. Smith testified that prior to the Reeves accident, he was not aware of an unusually high number of accidents at the intersection. He further testified that the MDOT knew of three or four accidents at the intersection, including the accident in this case, since the opening of the intersection on July 27, 1999. Smith opined that the accidents were occurring because drivers were not paying attention and were failing to yield the right of way.
¶ 9. On March 17, 2005, the circuit court entered a judgment finding that Carter’s negligence was the sole and proximate cause of the accident and that the MDOT was immune from liability under Mississippi Code Annotated section 11 — 46—9(l)(b), (d), (v), and (w). Although the court found that the intersection was unreasonably dangerous due to the high number of accidents, the court also found that Reeves failed to prove that the MDOT knew or should have known of the high number of accidents or that the accidents were caused by a dangerous condition at the intersection. Aggrieved by the court’s decision, Reeves appeals.
STANDARD OF REVIEW
¶ 10. Pursuant to Mississippi Code Annotated section 11-46-13(1) (Rev.2005), the trial court sits as the finder of fact in an action under the Mississippi Tort Claims Act. The findings of a trial court judge are afforded the same deference as the findings of a jury. Miss. Dep’t of Transp. v. Johnson, 873 So.2d 108, 111(¶8) (Miss.2004) (citing Bradley v. Tishomingo County, 810 So.2d 600, 602-3(¶ 11) (Miss.2002)). Consequently, the trial court’s findings will not be disturbed on appeal unless the judge abused his discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. Jones v. Miss. Transp. Comm’n, 920 So.2d 516, 518(¶ 3) (Miss.Ct.App.2006) (citing Miss. Dep’t of Trans. v. Trosclair, 851 So.2d 408, 413(¶ 11) (Miss.Ct.App.2003)). We will not reverse the findings of a circuit court when they are supported by substantial, credible, and reasonable evidence. Id. (citing Donaldson v. Covington County, 846 So.2d 219, 222(¶ 11) (Miss.2003)).
ISSUES AND ANALYSIS
I. Whether the trial court erred in holding that the MDOT was immune from suit.
II. Whether the trial court erred in holding that the MDOT had insufficient notice of a dangerous condition and/or intersection.
¶ 11. Under these two assignments of error, Reeves asserts that the trial court erred in finding that the MDOT was immune from liability pursuant to Mississippi Code Annotated section ll-46-9(l)(v)(w). Mississippi Code Annotated section 11-46-9(l)(v) (Rev.2002) provides in relevant part that a governmental entity and its employees acting within the scope of their employment are immune from liability for any claim:
[ajrising out of an injury caused by a dangerous condition on property of the governmental entity that was not caused by the negligent or other wrongful conduct of an employee of the governmental entity or of which the governmental entity did not have notice, either actual or constructive, and adequate opportunity to protect or warn against.
Mississippi Code Annotated section 11-46-(9)(l)(w) likewise provides immunity for claims:
[ajrising out of the absence, condition, malfunction or removal by third parties *888 of any sign, signal, warning device, illumination device, guardrail or median barrier, unless the absence, condition, malfunction or removal is not corrected by the governmental entity responsible for its maintenance within a reasonable time after actual or constructive notice.
Thus, whether the MDOT is immune from liability depends upon whether the MDOT had actual or constructive notice that there was a dangerous condition at the subject intersection.
¶ 12. Reeves maintains that the evidence “firmly established” that the MDOT had actual notice that the intersection of Mississippi Highway 145 and U.S. Highway 45 posed an unreasonably dangerous condition to motorists. In support of this position, Reeves cites Sheriff Kemp’s testimony that, prior to the accident on June 15, 2000, he knew that the subject intersection posed an unreasonable danger to motorists and that additional warning devices would have made the intersection safe. Reeves further cites Sheriff Kemp’s testimony that, more than a month prior to the Reeves accident, he voiced his concerns about the intersection to the MDOT.
¶ 13. In finding that the MDOT did not have notice of a dangerous condition at the intersection, the trial court noted that Sheriff Kemp could not remember exactly when he personally informed the MDOT of his concerns regarding the intersection. The trial court further noted Sheriff Kemp’s testimony that, after the Reeves accident, he spoke with Smith about the intersection, and they both agreed that the cause of the accidents was driver error and failing to yield to traffic on U.S. Highway 45. The trial court also relied on Smith’s testimony that the MDOT knew of three to four accidents, including the accident in this case, since the opening of the intersection on July 27, 1999. According to Smith, out of those three or four accidents, none were perceived to have been caused by roadway problems. Smith also testified that he did not remember having any conversations with Sheriff Kemp about the sheriffs concerns regarding the intersection prior to the Reeves accident. He further insisted that if such a conversation had taken place, then he would have remembered it.
¶ 14. In light of the aforementioned testimony, as well as the fact that the dispatch records did not reflect any calls from the Clarke County Sheriffs Office to the MDOT, we conclude that credible evidence supports the trial court’s finding that Reeves failed to prove that the MDOT had notice of a dangerous condition. Consequently, we also find that the trial court did not err in determining that the MDOT was immune from liability. This issue is without merit.
III. Whether the trial court erred in holding that Carter was the sole intervening and superceding act of negligence.
¶ 15. After determining that the MDOT was immune from liability, the court below addressed the issue of causation and determined that Carter’s negligence was the sole proximate cause of the accident. Because we find that the trial court did not err in determining that the MDOT was immune from liability, it is unnecessary to address whether the MDOT should be assigned fault for contributing to the accident. Therefore, this issue is without merit.
¶ 16. THE JUDGMENT OF THE CIRCUIT COURT OF CLARKE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, CHANDLER, *889 GRIFFIS, AND BARNES, JJ., CONCUR. ROBERTS, J., NOT PARTICIPATING.

. The MDOT was the only named defendant in the complaint. Nonetheless, on February 3, 2004, the circuit court entered an agreed order amending the style of the case to substitute the Mississippi Transportation Commission as the real party defendant and to remove the MDOT as a party defendant.

. Mississippi Highway 145 was formerly known as U.S. Highway 45, a two-lane highway which was the primary means of travel between Meridian, Clarkdale, and Quitman, Mississippi. Prior to the opening of the new four-lane U.S. Highway 45, the old U.S. Highway 45 was redesigned and renamed Mississippi Highway 145. In order to appropriately intersect the two highways, the MDOT relocated a portion of Mississippi Highway 145 and designed the relocated portion with two curves leading into the intersection with U.S. Highway 45. The intersection of the two highways was opened on July 27, 1999.