RUSSELL, J„
for the Court:
¶ 1. This case involves a wrongful-death action based on medical malpractice filed in the Circuit Court of Pike County, Mississippi. The circuit court entered a judgment in favor of Southwest Mississippi Regional Medical Center (SMRMC). Theresia Norris now appeals claiming the trial court erred in failing to amend its findings of facts and conclusions of law, as the final judgment was against the weight of the evidence; and, the trial court abused its discretion by denying the plaintiff’s motion to strike the defendant’s expert testimony and exhibits. Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. On the morning of November 2, 2002, Theresia Norris was admitted to the Emergency Unit at SMRMC due to what she believed to be extreme labor pains. Theresia was thirty-one years of age and thirty-three weeks pregnant. Her due date was December 18, 2002. Theresia was categorized as a high-risk pregnancy for several reasons, including her obesity; her being an insulin-dependent diabetic; her having had four previous caesarean sections; and her having previously given birth to very large twins. Theresia’s last caesarean section was ten months prior, on January 24, 2002.
¶ 3. Upon arrival to SMRMC, Theresia was taken to the obstetrics unit. Nurse Vicki Brown attached Theresia to a fetal heart monitor and tocodynamometer to assess uterine activity. Nurse Brown performed a vaginal examination on Theresia, which revealed no dilation in Theresia’s cervix. At approximately 9:30 a.m., There-sia was examined by Dr. David Hubbs, who was also the on-call physician for that morning. Dr. Hubbs was Theresia’s obstetrician-gynecologist, and had delivered Theresia’s previous three children. After performing a vaginal examination, Dr. Hubbs noted that Theresia’s cervix was “closed and thick,” meaning there had been no cervical changes indicative of labor. Dr. Hubbs also found that Theresia’s blood sugar was elevated, and ordered insulin and magnesium gluconate to stabilize her glucose levels. In addition, Dr. Hubbs ordered that Theresia’s blood sugar levels be checked every four hours while she was awake. Dr. Hubbs then left the hospital.
¶ 4. At around 10:30 a.m., Nurse Brown noted that Theresia’s abdominal pains had increased, and proceeded to page Dr. Hubbs. As Theresia’s pain intensified, Nurse Brown began searching for fetal heart tones using the fetal monitor. After no success in finding a fetal heart tone around 10:33 a.m., Nurse Brown asked Nurse Sharon Moak to continue searching for fetal heart tones while Nurse Brown paged Dr. Hubbs a second time from the nurse’s station. Nurse Moak noted her search for the fetal heart tones at around 10:55 a.m. At approximately 11:00 a.m., Nurse Brown noted that Dr. Hubbs had responded to her page, had been notified of Theresia’s condition, and was on his way to the hospital.
¶ 5. Upon arrival, Dr. Hubbs performed a sonogram and found that the baby had *413 no heart rate.[1] Dr. Hubbs then ordered a caesarean section, and Theresia was taken to surgery. The caesarean section revealed that Theresia had suffered a uterine rupture, where the fetus and placenta had completely separated from the uterus and had extruded into Theresia’s abdominal cavity.
¶ 6. On October 31, 2003, Theresia filed a wrongful-death/medical-malpractice claim against SMRMC, against Dr. Hubbs, individually, and against his clinic, David R. Hubbs, M.D., PLLC, Hubbs Richardson PLLC. Theresia included the baby’s wrongful-death beneficiaries as plaintiffs. SMRMC filed a separate answer on January 24, 2004. On August 28, 2007, There-sia filed an amended complaint to include the baby’s estate.
¶ 7. A trial was held on July 27, 2010. On July 30, 2010, the jury could not reach a verdict as to Dr. Hubbs and his clinic, and the court declared a mistrial. As to SMRMC, the court took the matter under advisement and reserved its ruling for a later date.[2] The court requested proposed findings of facts and conclusions of law from both SMRMC and Theresia.
¶ 8. Before filing her trial brief, There-sia filed a motion to strike the testimony of Dr. John Morrison, one of SMRMC’s expert witnesses. Theresia argued that Dr. Morrison’s use of pictures of fetal monitoring strips from another patient was unauthorized, and the use of confidential patient medical records constituted a violation of the Health Insurance Portability and Accountability Act (HIPAA). She also argued that Dr. Morrison’s use of the pictures was a discovery violation because, although Theresia was aware that the pictures of the fetal monitoring strips would be used at trial, she did not know that the strips were from an actual patient.
¶ 9. The trial court denied the motion to strike because the motion was untimely filed. While an objection to the use of the fetal monitoring strips was made during trial, Theresia’s counsel failed to state a basis for the objection. There was never an objection made based on a HIPAA violation or a discovery violation until the motion was filed. The court ruled that Theresia had been put on notice about the pictures prior to trial, and could have addressed the issue then. The court went on to say that the use of the pictures was not a HIPAA violation, because the pictures contained no identifying information.
¶ 10. On March 23, 2010, the court entered its findings of fact and conclusions of law, followed by a final judgment incorporating the former on April 11, 2011. The court dismissed the claims, ruling in favor of SMRMC. Theresia subsequently filed a motion for amended findings of fact and conclusions of law and entry of a new judgment, or in the alternative, a new trial. The trial court entered an order denying the motion on May 31, 2011.
¶ 11. On appeal, Theresia asserts that the trial court erred in denying her motion, because the court merely adopted verbatim SMRMC’s proposed findings of fact and conclusions of law, and because the judgment was against the overwhelming weight of the evidence. She also claims the trial court abused its discretion in allowing the expert testimony of Dr. Morrison. We discuss each of these issues below.
*414 DISCUSSION
¶ 12. At the outset, we note that this case involves multiple parties. Therefore, this Court does not have jurisdiction unless the requirements of Mississippi Rule of Civil Procedure Rule 54(b) are met. Rule 54(b) states:
When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an expressed determination that there is no just reason for delay and upon an expressed direction for the entry of the judgment. In the absence of such determination and direction, any order or other form of decision, however designated which adjudicates fewer than all of the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.
¶ 13. In the case before us, on April 11, 2011, the circuit court entered a final judgment as to SMRMC, expressly determined that there was no just reason for delay under Rule 54(b), and directed the entry of a final judgment for SMRMC. Therefore, this Court has jurisdiction to proceed with this appeal.
I. Whether the trial court erred in declining to amend its findings of fact and conclusions of law.
¶ 14. “The standard by which an appellate court reviews factual determinations made by a trial judge sitting without a jury is the substantial-evidence standard.” Delta Reg’l. Med. Ctr. v. Venton, 964 So.2d 500, 503 (¶ 4) (Miss.2007). Under this standard, a trial judge’s “findings will not be reversed on appeal where they are supported by substantial, credible, and reasonable evidence.” Id. This Court will apply a heightened level of scrutiny where a trial court has adopted a party’s proposed findings verbatim as its own, or where a trial court has made only minor alterations. Univ. of Miss. Med. Ctr. v. Pounders, 970 So.2d 141, 145 (¶ 11) (Miss.2007) (citing Venton, 964 So.2d at 504 (¶ 5); Miss. Dep’t of Transp. v. Johnson, 873 So.2d 108, 111 (¶ 8) (Miss.2004)); Smith v. Orman, 822 So.2d 975, 977-78 (¶ 7) (Miss.Ct.App.2002). However, if a review of the record reveals that evidence exists reasonably supporting the trial court’s findings, we will not find the trial court’s reliance on the proposed findings to be in error. Thomas v. Scarborough, 977 So.2d 393, 396 (¶ 10) (Miss.Ct.App.2007) (citing Sanderson v. Sanderson, 824 So.2d 623, 625-26 (¶ 18) (Miss.2002)).
¶ 15. Theresia argues that the trial court erred in not amending its findings of fact and conclusions of law, because it simply restated SMRMC’s proposed findings and conclusions, with the exception of a few sentences. A review of the record shows that the trial court did, in fact, adopt nearly verbatim SMRMC’s proposed findings and conclusions as its own; however, the record contains ample credible evidence supporting the trial court’s findings.
¶ 16. The trial court found that based on the evidence, the nursing staff at SMRMC “did not deviate from the standard of care of a reasonably prudent[,] diligent, minimally competent obstetrical nurse under the circumstances then existing,” nor was “any action or inaction [on the staffs part] the proximate cause of the fetal death.” Theresia argues that the *415 nursing staff at SMRMC deviated from the standard of care by failing to timely notify Dr. Hubbs of Theresia’s condition, failing to properly assess her pain as labor pains, and failing to assess the significance of the loss of fetal heart tones.
¶ 17. During trial, Dr. Stephen Jones, an expert witness for Theresia, stated that the amount of time a nurse should search for fetal heart tones after they are lost is not defined. Dr. Jones stated that in his opinion, if the fetal heart rate is lost for over a period of five minutes, the nurse should notify the doctor.
¶ 18. Nurse Brown testified that after performing Theresia’s vaginal examination, it was determined that Theresia was not in labor due to her cervix being closed. Nurse Brown stated that once Theresia’s stomach pains worsened, she paged Dr. Hubbs. While Nurse Moak continued to search for the fetal heart tones on the monitor, Nurse Brown paged Dr. Hubbs a second time before resuming her attempt to locate the fetal heart tones on the monitor. Nurse Brown stated that after she paged Dr. Hubbs the second time, he called back within two to three minutes. According to Nurse Brown, by 11:10 a.m., Dr. Hubbs had arrived at the unit, performed an ultrasound on Norris, and instructed the staff to set up for a caesarean-section procedure. Nurse Brown also testified that it is not uncommon for a fetal heart monitor to take ten or fifteen minutes to locate a baby’s heart rate in preterm obese patients. Nothing in the record suggests that the nursing staff at SMRMC deviated from the standard of care in searching for the fetal heart tones and attempting to contact Dr. Hubbs.
¶ 19. A review of the record indicates that Theresia was never in true labor while in the nurses’ care. Dr. Morrison testified that Theresia’s contractions demonstrated high frequency, low amplitude, which both he and Dr. Jones termed as “uterine irritability,” and not labor. Dr. Morrison provided the medical definition of labor as “regular contractions associated with changes in the cervix,” which Theresia’s multiple examinations did not reveal. After Dr. Hubbs performed Theresia’s caesarean section, Theresia’s cervix was still closed and thick, indicating that she was not in labor.
¶ 20. It was established during trial that Theresia’s uterine rupture occurred at some time between 10:31 a.m. and 10:33 a.m. Both Dr. Morrison and Dr. Jones testified that once a uterine rupture occurs, unless a caesarean section is performed within seventeen to eighteen minutes after the extrusion of the fetus, the likely result would be universal long-term neurological damage or death. However, Dr. Jones stated that he could not determine to a medical certainty whether Theresia’s uterine rupture resulted in the immediate expulsion of the fetus or whether the expulsion occurred over a period of five or ten minutes.
¶ 21. Based on the evidence, we cannot say that the trial court’s findings were erroneous. Although the trial court relied on SMRMC’s findings of fact and conclusions of law, its findings are consistent with substantial credible evidence in the record. For these reasons, we find that the trial court did not err in declining to amend its findings of fact and conclusions of law, as the judgment was well supported by the evidence. This issue is without merit.
II. Whether the trial court abused its discretion in denying Theresia’s motion to strike Dr. Morrison’s expert testimony and use of exhibits.
¶ 22. Next, Theresia contends that the trial court erred by allowing Dr. *416 Morrison’s expert testimony and use of pictures of fetal monitoring strips from an actual patient. “Admission or suppression of evidence is within the discretion of the trial judge and will not be reversed absent an abuse of that discretion.” Haggerty v. Foster, 838 So.2d 948, 958 (¶ 25) (Miss.2002) (quoting Broadhead v. Bonita Lakes Mall, Ltd. P’ship., 702 So.2d 92, 102 (Miss.1997)). Also, “[demonstrative evidence may be admitted at the trial court’s discretion, if such evidence [is] reasonably necessary and material.... ” Id. (internal citations omitted) (quoting Murriel v. State, 515 So.2d 952, 956 (Miss.1987)).
¶ 23. The purpose of the pictures was to demonstrate to the jury what contractions look like in a laboring patient. The pictures contained two separate exemplars illustrating the patterns of true labor versus the patterns of uterine irritability. One of the fetal monitoring strips on the pictures belonged to Theresia, and the other strip belonged to an unidentified patient of Dr. Hubbs. In her motion to strike, Theresia claimed Dr. Morrison’s use of the pictures constituted a discovery violation because Theresia was not informed prior to trial that one of the strips on the pictures was taken from an actual patient. The trial court denied the motion, ruling that any information pertaining to the pictures was discoverable, as Theresia was put on notice about SMRMC’s intention to use the pictures prior to trial.
¶ 24. Theresia also argues that Dr. Morrison’s use of the pictures constituted a discovery violation of HIPPA because Dr. Morrison did not obtain the patient’s consent. The trial court ruled that using the pictures was not a HIPPA violation, because no identifying information was associated with the pictures. The trial court further held that even if a HIPPA violation did occur, it was not a claim for Theresia to assert. We agree. Under Mississippi law, only the patient or the patient’s physician may assert claims pertaining to doctor-patient confidentiality. See M.R.E. 503(c).
¶25. Theresia admits in her own brief that the most highly contested issue in this case was whether or not she was, in fact, in labor. The pictures were both highly relevant and material because they provided the jury with a visual comparison of labor versus uterine irritability, which was the core of the main issue in this case. For these reasons, we find that the trial court did not abuse its discretion by allowing the expert testimony of Dr. Morrison and his use of the demonstrative aids. Thus, this issue is without merit.
CONCLUSION
¶26. The trial court did not err in declining to amend its findings of fact and conclusions of law, as the judgment was supported by substantial credible evidence. Furthermore, the trial court did not abuse its discretion by denying Theresia’s motion to strike the expert testimony of Dr. Morrison and his use of pictures as demonstrative aids. Therefore, we affirm the judgment of trial court.
¶ 27. THE JUDGMENT OF THE CIRCUIT COURT OF PIKE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
LEE, C.J., IRVING, P.J., BARNES, ISHEE, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. ROBERTS, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. GRIFFIS, P.J., NOT PARTICIPATING.

. The record is unclear as to the exact time of Dr. Hubbs’s arrival. However, the record does indicate that he arrived before 11:10 a.m. Norris’s medical records show that Dr. Hubbs had performed an ultrasound and ta-structed Nurse Brown to set up for Norris’s caesarean section at 11:10 a.m.

. This appeal pertains solely to the circuit court’s judgment regarding SMRMC.