JAMES, J.,
concurring in part and dissenting in part:
¶ 43. I agree with the majority’s opinion that genuine issues of material fact regarding the date of accrual of Kelley’s claim under the Mississippi Tort Claims Act (MTCA) preclude summary judgment on that claim. However, I dissent from the remaining parts of the majority opinion. I would find that the following questions on appeal involve genuine issues of material fact and that it was error to grant summary judgment: (1) whether the trial court erred in dismissing Kelley’s breach-of-contract claim; (2) whether the trial court erred in finding that the Department was a political subdivision and, therefore, was afforded the protections of the MTCA; (3) whether the trial court erred in failing to allow any discovery for any of the issues presented in this case; and (4) whether the trial court erred in dismissing Kelley’s claim of inverse condemnation. I also would find that the trial court abused its discretion in staying discovery, which precludes this case from being ripe for appellate review. Finding error, I would reverse and remand these four issues for further proceedings.
DISCUSSION
I. Whether the trial court erred in finding that the Department was a political subdivision and, therefore, was afforded the protections of the MTCA. .
¶44. Kelley contends that the trial court erred in determining that the Department was a political subdivision that was protected by the MTCA. Kelley argues that the Department was an independent contractor that submitted a bid to install utilities on private property. As a result, Kelley asserts that in this particular set of circumstances, the Department behaved like a private contractor and should be treated as such. I agree.
¶45. The MTCA “provides the exclusive civil remedy against a governmental entity or its employee for acts or omissions which give rise to a suit. Any tort claim filed against a government entity or its employee shall be brought only under the MTCA.” Watts v. Tsang, 828 So.2d 785, 791 (¶ 17) (Miss.2002). “A governmental entity is defined as the state and political subdivisions as herein defined.” Bolivar Leflore Med. Alliance LLP v. Williams, 938 So.2d 1222, 1226 (¶ 14) (Miss.2006). A political subdivision is defined by statute as:
[A]ny body politic or body corporate other than the state responsible for governmental activities only in geographic areas smaller than that of the state, including, but not limited to, any county, municipality, school district, charter school, volunteer fire department that is a chartered nonprofit corporation providing emergency services under contract with a county or municipality, community hospital as defined in Section 41-13-10, airport authority, or other instrumentality of the, state, whether or not the body or instrumentality has the authority to levy taxes or to sue or be sued in its own name.
Miss.Code Ann. § 11-46-1 (i) (Supp.2015).
¶ 46. “[A] private corporate entity whieh is responsible for governmental activities may properly be regarded as a political subdivision under1 [section] 11 — 46— l(i).” Bolivar, 938 So.2d at 1227 (¶ 14). Further, the supreme court has stated that “[governmental actions under the MTCA are those which are performed pursuant to *1122 the act of statute or are a matter of public necessity.” Spencer v. Greenwood/Leflore Airport Auth., 834 So.2d 707, 711 (¶ 12) (Miss.2003) (citing Thomas v. Hilburn, 654 So.2d 898, 900 (Miss.1995)). And we have previously held that “[a] state entity does not lose its status under the [MTCA] by merely contracting with a private entity.” Allstadt v. Baptist Mem’l Hosp., 893 So.2d 1083, 1087 (¶ 16) (Miss.Ct.App.2005). However, Kelley argues that since the Department entered into a contract with a private entity, under the unique circumstances of this case, the Department was no longer a political subdivision under the protection of the MTCA.
¶ 47. In Allstadt this Court was able to examine the contract’s language to" determine the relationship between the contracting parties, but here the Defendants argue that there was no contract. Id. at 1086 (¶ 13). We also noted in Allstadt that language in a contract could have been convincing enough to create a private entity, causing a state entity to be deemed private. Id. at 1087 (¶ 16). On the record before us, I cannot determine whether the Department acted as a private entity and an independent contractor in the construction and installation of the utility lines. I also cannot determine what the parties agreed upon regarding the construction and installation of the utility lines. .
¶ 48; The function of the Department is to provide utilities, specifically gas and water, which are considered “a matter of public necessity,” to the City of Corinth. The Department is governed by the Commission, which “controls, manages!,]- and operates the natural gas and water distribution. systems for the City of Corinth.” However, there is nothing in the bylaws of the Commission that authorizes the Department-to act as a private contractor for the installation of new utility services on private property. (Emphasis added). Likewise, the mission statement of the Commission includes-the control,, management, and operations of the gas and water distribution systems, but it does not include the construction or installation of the systems.
¶ 49. Kelley was informed that the Department was initiating a new program to compete with private construction contractors for the installation of utility services. Kelley accepted the low bid submitted by the Department after receiving bids from two other private construction contractors. I would find there is a genuine issue of material fact as to whether the Department departed from its stated function of providing utilities, specifically gas and water, to the City of Corinth when it constructed and installed the water lines on Kelley’s property following the bidding process. See Poppenheimer v. Estate of Coyle, 98 So.3d 1059, 1068 (¶ 29) (Miss.2012) (holding that despite providing valuable services to its community, a volunteer fire department was a private entity and an independent contractor not clothed with immunity under the MTCA). Additional discovery will allow the trial court to properly determine whether the Department is protected under the MTCA as a political subdivision when acting in this alternate capacity.
II. Whether the trial court erred in dismissing Kelley’s breach-of-contract claim.
¶ 50. I do not agree with, the trial court’s determination that Kelley’s breach-of-contract claim was merely a relabeled tort claim. Kelley’s claim stems from the Department’s alleged breach of a construction agreement. Under Rule 8 of the Mississippi Rules of Civil Procedure, Kelley may state as many separate claims as he has, regardless of consistency. Jordan v. Wilson, 5 So.3d 442, 447-48 (¶ 19) (Miss. *1123 Ct.App.2008). In Alexander v. Taylor, 928 So.2d 992, 995-96 (¶ 10) (Miss.Ct.App.2006), we stated:
It is self-evident that only those suits “subject to” the [MTCA] are controlled by that Act’s statute of limitations. Efforts to re-label tort suits as something else in order to avoid some part of the Act are ineffective, as this quoted language indicates. Yet that is not the same thing as a statutory assertion that there are no suits other than in tort that can be brought against governmental offices and officials.
Thus, Kelley’s breach-of-contract claim may not be subject to the MTCA. The MTCA does not apply , to pure contract actions because entering into a contract waives sovereign immunity from suits brought to enforce the contract. Montgomery v. Mississippi, 498 F.Supp.2d 892, 905 (S.D.Miss.2007).
¶ 51, Kelley contends that a valid, binding contract existed between himself, the Department, the Commission, and the City. In order to establish a breach-of-contract claim, “the plaintiff must prove by a preponderance of the evidence: (1) the existence of a valid and binding contract, (2) the defendant has breached the contract, and (3) the plaintiff has been damaged monetarily.” Suddith v. Univ. of S. Miss., 977 So.2d 1158, 1175 (¶ 35) (Miss.Ct.App.2007). In order for a valid contract to exist, the following elements must be present: “(1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation.” Rotenberry v. Hooker, 864 So.2d 266, 270 (¶ 13) (Miss.2003).
¶ 52. The Department admitted in its answer to Kelley’s third amended complaint that there was a written agreement with Kelley for the installation of-water lines in Magnolia Lake Estates. Taking Kelley’s assertions as true, I would find that each element of a valid and enforceable contract is present. However, the Defendants argue that because the, contract was not entered into the minutes of the Commission, there, was no valid contract and thus no breach of contract.
¶ 53. “It is a fundamental and inviolable policy of the State of Mississippi that the exclusive means by which a county government may enter a contract or amend or alter any contract entered by the county is through public action by the county’s board of supervisors, which action must be evidenced by an entry on its minutes.” Pike Cty. v. Indeck Magnolia, LLC, 866 F.Supp.2d 589, 591 (S.D.Miss.2012). It has also been determined by the supreme court that the board of a utilities district is a “public corporation and a body politic,” and, as such, the general rule that a board of supervisors may “act only through its minutes” applies to it as well. Rawls Springs Util. Dist. v. Novak, 765 So.2d 1288, 1291 (¶ 10) (Miss.2000), “This requirement applies not only to contract formation, but to contract modification as well.” Urban Developers LLC v. City of Jackson, Miss., 468 F.3d 281, 299 (5th Cir.2006). . However, the supreme court has also stated that “a contract with a public board may be enforced if enough of the terms and conditions of the contract are contained on the minutes.” Rawls Springs Util. Dist., 765 So.2d at 1291 (¶ 10).
¶ 54. Here, the Commission’s minutes on July 9, 2007, confirm the receipt of $82,000 from Kelley as the initial payment for “aid of construction for water installation.” This supports .Kelley’s claim that a valid and enforceable contract was entered into by the Department. Indeed, the Department, which was self-proclaimed as a *1124 “not-for-profit” entity, does not keep minutes, so obviously a contract is not reflected in minutes that do not exist. Again, it is admitted by the Department that it had an agreement with Kelley to install the water lines. Conversely, the Department’s argument that no contract exists because no express contract is reflected in any minutes may be construed as evidence that the Department was acting outside its function as a political subdivision and arm of the Commission when it submitted a bid and later constructed and installed the water lines on Kelley’s property. I would find that there is a genuine issue of material fact regarding whether there was a valid and enforceable contract between these parties.
III. Whether the circuit court erred in failing to allow any discovery on any of the issues presented in this case.
¶ 55. Kelley argues that the trial court erred in staying all the discovery in this case. I agree. Kelley submitted discovery requests to the Defendants with the initial complaint. Here, Kelley submitted discovery and received limited responses. The Defendants requested an extension of time to respond to Kelley’s discovery, and in lieu of answering the discovery, filed their initial motion for summary judgment as well as a motion to stay discovery.
¶ 56. The standard of review “of a trial court’s management of the [pretrial] discovery process is abuse of discretion.” Partin v. N. Miss. Med. Ctr. Inc., 929 So.2d 924, 938 (¶ 67) (Miss.Ct.App.2005) (citing Bowie v. Montfort Jones Mem’l Hosp., 861 So.2d 1037, 1042 (¶ 14) (Miss.2003)). Mississippi Rule of Civil Procedure 26(b)(1) provides:
Parties may obtain discovery regarding any matter, not privileged, which is relevant to the issues raised by the claims or defenses of any party. The discovery may include the existence, description, nature, custody, condition and location of any books, documents, electronic or magnetic data, or other tangible things; and the identity and location of persons (i) having knowledge of any discoverable matter or (ii) who may be called as witnesses at the trial. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.
¶ 57. Moreover, “the party resisting summary judgment must present specific facts why he cannot oppose the motion and must specifically demonstrate ‘how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant’s showing of the absence of a genuine issue of fact.’ ” Grant v. Ford Motor Co., 89 So.3d 655, 674-75 (¶ 36) (Miss.Ct.App.2012).
¶ 58. Kelley made an attempt to obtain information that was in the control of the Defendants to defend against the summary-judgment motion, namely to determine whether the Department was acting as an independent contractor and private entity. For instance, it was not until after the hearing on the competing motions for summary judgment, that Kelley received the bylaws of the Commission. Kelley was not afforded an adequate opportunity to conduct meaningful discovery. The order staying discovery significantly impeded Kelley’s ability to defend against the motion for summary judgment, as much of the information relevant to his claims was in the exclusive control of the Defendants. Therefore, I would find that the trial court abused its discretion in refusing to lift the stay of discovery.
*1125 IV. Whether the trial court erred in dismissing Kelley’s claim of inverse condemnation.
¶59. Finally, Kelley argues that the trial court erred in dismissing his inverse-condemnation claim. Kelley argues that the Defendants are responsible for compensating him for the damages caused to his private property under the doctrine of inverse condemnation. Article 3, Section 17 of the Mississippi Constitution provides:
Private property shall not be taken or damaged for public use, except on due compensation being first made to the owner or owners thereof, in a manner to be prescribed by law; and whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be public shall be a judicial question, and, as such, determined without regard to legislative assertion that the use is public.
¶60. The Mississippi Supreme Court has held that “Section 17 is not applicable except where private property is taken for public use by public authorities.” Bradley v. Tishomingo Cty., 810 So.2d 600, 603 (¶ 13) (Miss.2002). The trial court determined that Kelley’s inverse-condemnation claim was not applicable because there was no evidence that any eminent-domain or condemnation action was commenced by the Defendants against Kelley or his property. However, the taking or damaging of property without a formal eminent-domain or condemnation action is exactly what an inverse-condemnation claim is based on.
Inverse condemnation! ] has been characterized as an action or eminent domain proceeding initiated by the property owner, rather than the condemnor, and has been deemed to be available where private property has been actually taken for public use without formal condemnation proceedings and where it appears that there is no intention or willingness of the taker to bring such proceedings.
Jackson Mun. Airport Auth. v. Wright, 232 So.2d 709, 713 (Miss.1970).
¶ 61. The majority states that there is no evidence that Kelley’s property was taken or damaged for any form of public use. Certainly, the lines were installed with the ultimate purpose of providing public utilities, specifically gas and water, to households in the City of Corinth. I would find that Kelley has alleged sufficient facts that preclude the grant of summary judgment on this issue and reverse the grant of summary judgment on this issue.
CONCLUSION
¶ 62. I agree with the majority that genuine issues of material fact preclude the grant of summary judgment on Kelley’s claim under the MTCA. However, I would find the issues- of whether the Department was a political- subdivision; whether the MTCA applies to the Department, Commission, and City; whether a contract exists; and whether the doctrine of inverse condemnation is applicable involve genuine issues of material fact that preclude the granting of summary judgment in favor of the Defendants. I would also find that the trial court abused its discretion in staying discovery because Kelley was denied any meaningful opportunity to defend against the Defendants’ motion for summary judgment. Accordingly, I would reverse and remand this case for further proceedings.